Melody MARTIN Appellant/Respondent
(Plaintiff Below),

v.

Robert W. RICHEY, Jr., M.D.,
Appellee/Petitioner (De-
fendant Below ).

No. 53S04–9805–CV–271.

Supreme Court of Indiana.

July 8, 1999.

Mary A. Findling, Findling, Garau, Germano & Pennington, P.C., Indianapolis, Indiana, Attorney for Appellant.

Gary J. Clendening, Kendra Gowdy Gjerdingen, Mallor, Clendening, Grodner & Bohrer, Bloomington, Indiana, Karl Mulvaney, Bingham Summers Welsh & Spilman, Indianapolis, Indiana, Attorneys for Appellee.

Laurence H. Tribe, Cambridge, Massachusetts, Roger L. Pardieck, Thomas C. Doehrman, Edgar W. Bayliff, Robert L. Justice, Henry J. Price, Mary Beth Ramey, Gregory Cross, Indianapolis, Indiana, Amicus Curiae for Appellant Indiana Trial Lawyers Association.

David C. Jensen, Sherry L. Clarke, Judith I. Snare, Eichhorn & Eichhorn, Hammond, Indiana, Amicus Curiae for Appellee Indiana State Medical Association.

Philip E. Kalamaros, Edward N. Kalamaros & Associates, South Bend, Indiana, Kevin Charles Murray, Todd J. Kaiser, Nelson D. Alexander, T. Joseph Wendt, Locke, Reynolds, Boyd & Weisell, Indianapolis, Indiana, Amicus Curiae for Appellee Indiana Defense Lawyers Association.

## ON PETITION TO TRANSFER

SELBY, J.

Dr. Robert W. Richey, Jr., appellee/petitioner and defendant below ("defendant"), challenges the decision of the Court of Appeals, 674 N.E.2d 1015 (Ind.Ct.App.1997), which reversed the trial court's grant of summary judgment in favor of defendant. The Court of Appeals held, contrary to the decision of the trial court, that the doctrine of fraudulent concealment permits defendant's former patient, Melody Martin ("plaintiff"), to avoid the two-year medical malpractice statute of limitations, Indiana Code section 34–18–7–1(b) (1998) (repealing section 27–12–7–1(b) (1993)), and that the statute of limitations, in any event, is unconstitutional under Article I, Sections 23 and 12, the Privileges and Immunities and Open Courts Clauses of the Indiana Constitution. We grant transfer because we agree with the result reached by the Court of Appeals, but reach this result by different means. We believe that summary judgment was inappropriate because the medical malpractice statute of limitations, under both Section 23 and Section 12, is unconstitutional *as applied* to plaintiff. We therefore reverse the trial court's grant of summary judgment in favor of defendant and remand for further proceedings not inconsistent with this opinion.

### FACTS AND PROCEDURAL HISTORY

The facts viewed in the light most favorable to nonmovant Melody Martin reveal that on March 13, 1991, Martin went to the office of Dr. Robert Richey, who is a gynecologist practicing in Bloomington, Indiana, and complained that she had a lump in her right breast. She reported that the lump had been there for a while and that she had had it checked before, but recently she had experienced some "shooting pains" from the lump. (R. at 195.) Because Dr. Richey was out of town on March 13, Rose Seguin ("Seguin"), Dr. Richey's nurse practitioner, examined Martin. Seguin made arrangements

for Martin to have a mammogram at Bloomington Hospital on the same day.

The radiologist who read Martin's mammogram noted in his report that there was a benign cyst just above the nipple in the right breast and that there also was a "[s]olid echogenic mass in the lower outer quadrant of the right breast." (R. at 202.) As to the solid mass, he advised that a "[b]iopsy may be indicated based on the patient's history of enlargement of this lump." (R. at 202.)

On the next day, March 14, 1991, Seguin called Martin to tell her that the mammogram revealed a solid mass in the lower outer quadrant of her right breast, and that the radiologist who had reviewed her mammogram and ultrasound recommended that she get a biopsy of the mass. Seguin also advised Martin that she not wait to schedule an excisional biopsy with a general surgeon. The following day, Martin telephoned Seguin and told her that she had scheduled an appointment for an excisional biopsy with Dr. Topolgus, a general surgeon, on Tuesday, March 19, 1991. This information is noted on the patient's chart. Martin also asked that Dr. Richey call her when he returned to the office because she had some questions about the mammogram and the biopsy procedure.

When Dr. Richey returned to his office on Monday, March 18, 1991, Seguin reported that, upon her examination of Martin, she felt a firm solid mass in the right outer quadrant of her right breast, that the mammogram and ultrasound revealed a solid mass, and that the radiologist recommended an excisional biopsy. Seguin also advised him that Martin already had scheduled an excisional biopsy for the next day. Dr. Richey did not consult with the radiologist regarding his findings and recommendation regarding the need for a biopsy. He called Martin on Monday evening and told her to cancel her appointment for the excisional biopsy. Dr. Richey advised her that he would perform a needle aspiration in his office instead. Martin testified that Dr. Richey did not inform her that, even if the results of the needle biopsy were negative for malignancy, there would be a need for further follow-up with Dr. Topolgus.[1]

Dr. Richey went on to emphasize that he advised Martin regarding the needle aspiration because she did not have insurance and was concerned about the cost of the biopsy procedure, as well as about pain, time off work, and the disfigurement of her breast. He stated that he performed the aspiration procedure free of charge, and again emphasized that he had recommended follow-up with Dr. Topolgus even before performing the biopsy:

Q. Had you discussed with her if the findings came back negative with the aspiration that you would recommend going forward with an excisional biopsy?

---

[1]. Dr. Richey testified as follows:

Q. What did you tell her about her options specifically?
A. I told her that she had the option of having a breast biopsy performed, and I told her that there were—she also had an option of having a breast aspiration. She also had, in an effort to gather more information with regard to the feasibility of performing a breast biopsy, and then I talked to her about—I believe, I should leave it at that. That's all I can remember at this point. We talked about the need to follow through.
Q. What did you tell her about a breast biopsy? ...

...

A. We discussed the fact—she wanted to know whether or not a breast biopsy would guarantee discovery of a breast cancer and I told her in a small percentage of cases a breast biopsy could be performed and it does not result in the recovery of cancerous breast tissue.

Q. And what did you tell her with regard to a breast aspiration?
A. I told her that that would serve as another means of providing some information to determine the feasibility of a breast biopsy, especially due to the fact that the discomfort she was having would more likely arise from the cyst as opposed to the solid area in her breast and that a breast—the more information we could get since the mammogram and the ultrasound were not diagnostic and definitive, that we could add another page of data to her situation if we were to get a breast biopsy [sic] and deliver that then to a general surgeon and have him evaluate whether or not a breast biopsy would be in her best interest.
Q. Did you tell her that an excisional biopsy would probably be more diagnostic than needle aspiration?
A. I don't recall whether we said that for sure.
(R. at 149–50.)

A. We didn't put it in those terms. As I told her that night when we were discussing this added option that I would provide for her at no charge that I would—since there was no evidence at that point stating definitively that she had cancer in cooperation [sic] with her desire to keep the cost of this as low as possible I said that we should take the information she had from her mammogram and from her ultrasound along with a breast aspiration and that I would discuss that with Dr. Topolgus and then she should, at that point in time, follow up with Dr. Topolgus with all the information she had available at that point in time to see if her breast biopsy was, in his opinion, indicated. Based on the evidence that we had gotten together I felt that that was the most cost effective matter [sic] in which we could get her case dealt with.

(R. at 153.) No notation regarding this telephone conversation appears in Dr. Richey's medical records for Melody Martin.

On March 20, 1991, Martin went to Dr. Richey's office for the needle aspiration. He first aspirated fluid from the cyst, and then, using the same syringe, he made several attempts to get fluid from the solid mass area. On the sixth attempt he was able to extract a small amount of liquid from the area, but he was unsure whether it came from the solid mass or the surrounding tissue. Nevertheless, according to Martin, Dr. Richey informed her that he was able to aspirate a small amount of fluid from the solid mass and did not tell her that the aspirate could have come from the surrounding tissue rather than the mass itself. There is nothing in the record, as we read it, that reflects that Dr. Richey disputes these facts. The pathology report indicated that no malignant tumor cells were present in the specimen drawn by Dr. Richey.

According to Seguin, who stayed in the room with Martin while Dr. Richey performed the needle aspiration, he told Martin that he thought the lump was benign, and he did not tell her that she needed to follow-up with an excisional biopsy regardless of the results of the needle aspiration.[2] Martin also testified that Dr. Richey assured her that the mass was probably fibrocystic breast disease,[3] and that she had nothing to worry about. She further testified that Dr. Richey did not tell her at the time of the aspiration or later that she needed to follow-up with Dr. Topolgus or to get an excisional biopsy. Regarding his communication with Martin at the time of the procedure, Dr. Richey testified as follows:

> The discussion I had with Melody at the time of the aspiration was that we would get the aspiration, and once those results were available that I wanted her to carry on, at least discuss the matter with Dr. Topolgus, either discuss it over the phone or better yet plan to have an office visit with him and go over all these results and determine at that point in time whether she should proceed with a breast biopsy.

(R. at 171.) Again, although Dr. Richey maintains that he discussed follow-up care with Martin in Seguin's presence, there is no note in the chart to this effect, and, in fact, there were no notes regarding Dr. Richey's needle aspiration on Martin or any of his conversations with her.

After the needle aspiration, Dr. Richey maintains that he discussed Martin's case with Dr. Topolgus. Neither Martin nor Dr. Richey's office, however, scheduled a follow-up consultation with Dr. Topolgus at that time. After March of 1991, Martin did not consult with Dr. Richey or any other health care provider regarding the lump until April

---

**2.** Seguin testified that during the time she worked for Dr. Richey, from August 1989 until May of 1994, she had never seen Dr. Richey perform a needle aspiration of a breast lump on any of his other patients.

**3.** "Fibrocystic disease" is defined as a "catch-all term" used to describe mastalgia (that is, breast pain), breast cysts, and nondescript lumpiness, and is "a condition important primarily because of its possible relation to subsequent risk of developing breast cancer." THE MERCK MANUAL OF DIAGNOSIS AND THERAPY 1814 (Robert Berkow, M.D., et. al., eds., 16th ed.1992) [hereinafter "Merck Manual"]. *See also* HARRISON'S PRINCIPLES OF INTERNAL MEDICINE 1827 (Kurt J. Isselbacher, A.B., M.D., et al. eds., 13th ed.1994) [hereinafter "Harrison's"].

of 1994.[4]

In April of 1994, Martin experienced increased pain from the lump in her breast and pain under her right arm. She had a mammogram, which revealed an abnormal mass in the lower outer quadrant of her right breast. A core biopsy resulted in a diagnosis of adenocarcinoma of the breast. On April 15, 1994, Dr. Topolgus performed a right modified radical mastectomy of Martin's right breast. Because there was extensive lymph node involvement, Martin underwent a course of chemotherapy from May of 1994 through September of 1994.

On October 14, 1994, Martin filed her complaint against Dr. Richey for damages with the Indiana Department of Insurance. She alleged that Dr. Richey was negligent in his care and treatment due to his failure to diagnose and treat her breast cancer in a timely manner. Martin requested review by the Medical Review Panel pursuant to Indiana's Medical Malpractice Act, specifically, Indiana Code section 34–18–7–1 (1998) (repealing section 27–12–8–4 (1993)). On May 19, 1995, Dr. Richey filed a Motion for Preliminary Determination of a Question of Law and Motion to Dismiss with the court below, pursuant to Indiana Code section 34–18–11–1(a) (1998) (repealing section 27–12–11–1(a) (1993)), and argued that Martin's complaint was time-barred by the applicable two-year statute of limitations set out in Indiana Code section 34–18–7–1(b). Martin's opposition to this motion, which was supported by affidavits of Martin and Seguin as well as excerpts from Dr. Richey's deposition and other materials, asserted that the equitable doctrines of either active or constructive fraudulent concealment precluded the application of the statute of limitations, and that, in any event, the statute was an unconstitutional violation of the Due Process and Equal Protection Clauses of the U.S. Constitution and the Privileges and Immunities Clause of the Indiana Constitution. Dr. Richey filed a reply in support of summary judgment in his favor.

After reviewing the motion, opposition, and supporting documents and hearing oral argument, the trial court found that Dr. Richey's conduct in performing a needle aspiration on Martin's breast and his reporting of a negative result did not amount to active fraudulent concealment. The trial court also declined to hold that the two-year statute of limitations was unconstitutional. The trial court then granted summary judgment for Dr. Richey.

Martin appealed and the Court of Appeals reversed the trial court. The Court of Appeals held that there were genuine issues of material fact regarding the doctrine of active fraudulent concealment and also held that the statute of limitations contained in the Medical Malpractice Act violated Article I, Section 23 and Section 12 of the Indiana Constitution. 674 N.E.2d 1015 (Ind.Ct.App. 1997). We grant transfer in this case to address the constitutionality of these Sections in a case where the plaintiff alleging malpractice suffers from a medical condition with a long latency period which prevents her from discovering the alleged malpractice within the two-year medical malpractice statutory period.

## DISCUSSION

We reverse the trial court's grant of summary judgment in this case solely on the basis of the constitutional claims presented. We agree with the plaintiff that the application of the statute of limitations contained in Indiana Code section 34–18–7–1(b) violates Article I, Section 23 of the Indiana Constitution, the Privileges and Immunities Clause, and also violates Article I, Section 12 of the Indiana Constitution, the Open Courts Clause.[5]

---

4. Dr. Richey testified that he expected to see Martin for follow-up regarding the breast lump or any other gynecological issues in six to twelve months as was his general practice. Martin did not consult with Dr. Richey about the breast lump after March of 1991, but she did continue to see Seguin at Dr. Richey's office for hormone replacement therapy until October of 1991. After his discussion with Dr. Topolgus in 1991, Dr.

Richey did not discuss her case again with Dr. Topolgus until the week of her surgery. He also saw, but did not approach Martin, after her surgery and while she was in the recovery room.

5. Plaintiff asserts in passing that the statute of limitations violates not only her state constitutional rights, but also her federal rights under the Equal Protection and Due Process Clauses of the

■ The relevant statute of limitations provides in pertinent part as follows:

A claim, whether in contract or tort, may not be brought against a health care provider based upon professional services or health care that was provided or that should have been provided unless the claim is filed within two (2) years after the date of the alleged act, omission, or neglect. . . .

IND. CODE § 34–18–7–1(b) (1998). This Court previously has construed this medical malpractice statute of limitations as an "occurrence" rather than a "discovery" statute. *See Hospital Corp. of America v. Hiland,* 547 N.E.2d 869, 872 (Ind.Ct.App.1989), *adopted in Cacdac v. Hiland,* 561 N.E.2d 758 (Ind.1990). As such, an action for medical malpractice generally must be filed within two years from the date the alleged negligent act occurred rather than from the date it was discovered. *Id.*[6]

Here, the asserted negligence was defendant's failure to diagnose and treat plaintiff's breast cancer. The relevant negligent acts included his advice to cancel the scheduled biopsy, his decision to aspirate the solid mass, and his failure to inform her of the importance of following up with a general surgeon for a biopsy even if the results of the needle aspiration were negative for malignancy. Defendant performed the needle aspiration in March of 1991 and her last visit to his office was in October of 1991.[7] Plaintiff did not discover that she had breast cancer until April of 1994 and filed her complaint on October 14, 1994. Thus, because Martin did not file her complaint until October 14, 1994, it was not timely filed within the applicable two-year statute of limitations.

The Court of Appeals below struck down Indiana Code section 34–18–7–1(b) as unconstitutional on the grounds that it violated the Privileges and Immunities Clause of the Indiana Constitution, Article I, Section 23, as well as the Open Courts Clause, Article I, Section 12. 674 N.E.2d at 1029. In the wake of the decision of the Court of Appeals in this case, two other Court of Appeals' decisions reached the constitutional questions, and these cases are now pending be-

---

Fourteenth Amendment to the United States Constitution. Plaintiff, however, has not cogently briefed the federal constitutional issues. We, therefore, do not address those issues.

6. Prior to 1941, the general two-year discovery-based limitations period for injuries to persons set out in Indiana Code section 34–1–2–2(1) (1998) applied to medical malpractice claims as well as other tort actions. With the enactment of 1941 Acts, ch. 116, section 1 (codified as Indiana Code section 34–4–19–1 (1993) and recently amended and recodified as section 34–11–2–3 (1998)), the legislature clarified that the longer statute of limitations period for contracts set out in section 34–1–2–2 was not applicable to medical malpractice cases. *See Chaffin v. Nicosia,* 261 Ind. 698, 704–05, 310 N.E.2d 867, 871 (1974) (Arterbrun, C.J., concurring in result). The legislature also apparently intended the 1941 enactment to clarify that the two-year period generally is triggered by the occurrence of the alleged negligent act rather than by the actual discovery of the malpractice and resulting injury. *See Hospital Corp. of America v. Hiland,* 547 N.E.2d 869, 872 (Ind.Ct.App.1989), *adopted in Cacdac v. Hiland,* 561 N.E.2d 758 (Ind.1990); *Toth v. Lenk,* 164 Ind.App. 618, 620–21, 330 N.E.2d 336, 338 (1975). The medical malpractice statute of limitations set out in section 34–18–7–1(b) and at issue here is substantially similar to that which was enacted as part of the Medical Malpractice Act of 1975 (Indiana Code section 16–9.5–3–1(a) (1971 & Supp.1976)).

7. Martin has not argued that Dr. Richey's failure to inform her of the importance of following up with a general surgeon constituted a "continuing wrong" that extended beyond March of 1991, and that the two-year statute of limitations period was tolled under the "continuing wrong theory." *See, e.g., Frady v. Hedgcock,* 497 N.E.2d 620, 622 (Ind.Ct.App.1986) (holding that a material issue of fact existed as to whether physician's treatment in prescribing medications that led to renal failure constituted a continuing wrong); *Ferrell v. Geisler,* 505 N.E.2d 137, 140 (Ind.Ct.App.1987) (holding that a material issue of fact existed as to whether physician's failure to diagnose plaintiff's breast cancer constituted a continuing wrong). *Cf. Havens v. Ritchey,* 582 N.E.2d 792, 795 (Ind.1991) (holding, in the context of a case involving an ineffective surgery and a misdiagnosis, that when the sole claim of medical malpractice is the failure to diagnose, the omission cannot as a matter of law extend beyond the time the physician last rendered a diagnosis). This case, therefore, affords us no opportunity to consider the applicability of the continuing wrong theory in a case involving a failure to diagnose and treat breast cancer due to the use of inappropriate diagnostic tools, the ineffective use of diagnostic tools, or the failure to encourage follow-up and further diagnostic procedures.

fore the court. *See Harris v. Raymond,* 680 N.E.2d 551 (Ind.Ct.App.1997) (holding statute unconstitutional), *trans. granted, opinion vacated,* 698 N.E.2d 1192 (1998); and *Johnson v. Gupta,* 682 N.E.2d 827 (Ind.Ct.App. 1997) (holding statute constitutional), *trans. granted, opinion vacated,* 698 N.E.2d 1192 (Ind.1998). A third case, which raises constitutional and related issues and is before this Court on direct appeal from the trial court, is *Van Dusen v. Stotts,* Cause No. 03D02–9609–CP–193, (holding statute unconstitutional as applied) [hereinafter *Van Dusen*], and we decide that case today together with this case.

■ Although we agree with the Court of Appeals that the statute of limitations contained in Indiana Code section 34–18–7–1(b) cannot operate to bar Martin's claim, we do so without striking down the statute as unconstitutional on its face. Rather, we hold that it is unconstitutional *as applied* to plaintiff. This Court has upheld the facial constitutionality of this statute in previous cases. *See, e.g. Rohrabaugh v. Wagoner,* 274 Ind. 661, 413 N.E.2d 891 (1980); *Johnson v. St. Vincent Hosp., Inc.,* 273 Ind. 374, 404 N.E.2d 585 (1980). However, a facially constitutional statute may be unconstitutional *as applied* to a particular plaintiff. *See City of Fort Wayne v. Cameron,* 267 Ind. 329, 334, 370 N.E.2d 338, 341 (1977) (finding notice provision contained in Indiana Code section 18–2–2–1 (1977), while facially constitutional, was unconstitutional *as applied* to plaintiff). In neither *Rohrabaugh* nor *Johnson* did the plaintiffs allege that the statute of limitations contained in the Medical Malpractice Act violated the constitution because the long latency period of their medical disease or condition prevented them from discovering the alleged malpractice during the statutory limitations period. The plaintiff in today's case, Melody Martin, suffers from breast cancer, a medical condition with a long latency period which prevented her from discovering her doctor's malpractice within the statutory two-year period.

We find that the statute of limitations *as applied* to the plaintiff in this case is unconstitutional under Section 23 because it is not "uniformly applicable" to all medical mal-

practice victims within the meaning of *Collins v. Day,* 644 N.E.2d 72 (Ind.1994). Simply put, the statute precludes Melody Martin from pursuing a claim against her doctor because she has a disease which has a long latency period and which may not manifest significant pain or symptoms until several years after the asserted malpractice. The statute of limitations is also unconstitutional under Section 12 because it requires plaintiff to file a claim before she is able to discover the alleged malpractice and her resulting injury, and, therefore, it imposes an impossible condition on her access to the courts and pursuit of her tort remedy.

### I. *Privileges and Immunities Clause, Article I, Section 23*

■ The Privileges and Immunities Clause of the Indiana Constitution provides: "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens." IND. CONST. art. I, § 23. Plaintiff argues that Indiana Code section 34–18–7–1(b) is unconstitutional under Section 23 because, under that statute, victims of medical malpractice are treated differently than other tort victims, and because there is nothing about malpractice victims which warrants this differing treatment. The specific treatment about which plaintiff complains relates to the manner in which the two-year statute of limitations is construed and applied.

This Court has held that, under Indiana Code section 34–1–2–2 (1993) (now amended and recodified as Indiana Code section 34–11–1–1 (1998)), the general tort statute of limitations, a tort claim must be filed within two years from the date the cause of action "accrues," and that a tort claim accrues "when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another." *Wehling v. Citizens Nat'l Bank,* 586 N.E.2d 840, 843 (Ind.1992). At the same time, this Court has interpreted section 34–18–7–1(b) as an "occurrence" rather than a "discovery" statute, that is, a statute of limitations which commences running at the time of the act of malpractice rather than from the date on

which the malpractice is discovered. *See supra* text accompanying note 6. Thus, plaintiff asserts, while most tort victims can avail themselves of the more liberal discovery rule, only victims of medical malpractice are required to file a claim within two years of the act of malpractice, regardless of whether they have discovered the malpractice, and this is not a distinction based on reason. Plaintiff also specifically urges this Court to reject prior precedent discussing the medical malpractice statute of limitations, because the legislative goals supposedly furthered by the statute are no longer furthered by the statute, if they ever were.

Defendant argues that the relevant classification for the purpose of Article I, Section 23 is not malpractice victims and all other tort victims but rather the health care provider and all other tortfeasors. Defendant also correctly asserts that this Court has previously upheld the statute of limitations against a challenge that it unconstitutionally granted special privileges to medical professionals. Specifically, the Court held that the statute was rationally related to the legitimate legislative goal of maintaining sufficient medical treatment and controlling medical malpractice insurance costs. *See Rohrabaugh v. Wagoner,* 274 Ind. 661, 666–67, 413 N.E.2d 891, 894–95 (1980); *Johnson v. St. Vincent Hosp., Inc.,* 273 Ind. 374, 379–80, 404, 404 N.E.2d 585, 589–90, 604 (1980).

In considering the trial court's decision to reject plaintiff's argument and grant defendant's motion for summary judgment, the Court of Appeals weighed the arguments of the parties and concluded that the statute was unconstitutional under Article I, Section 23. 674 N.E.2d at 1019–1023. In doing so, the Court of Appeals correctly identified the appropriate analysis as that which we set out in *Collins v. Day,* 644 N.E.2d 72 (Ind.1994), but incorrectly applied that precedent here, with the result that the Court of Appeals found it necessary to strike down the statute as unconstitutional. Although we agree with plaintiff and with the Court of Appeals that it was error to grant summary judgment for defendant, we need not strike down the statute to reach this conclusion. Rather, giving due deference to the function of the legisla-

ture and to its legislative enactment, we conclude only that the statute ·of limitations is unconstitutional *as applied* to plaintiff.

■ Our decision in *Collins* focused on the grant of a special privilege to the relevant class in that case, which involved the exemption of agricultural employers from the compulsory scope of coverage of the worker's compensation scheme. Nevertheless, we recognized that "implicit in an enactment that imposes an unequal burden is the grant of a special privilege or immunity to persons or classes exempted from the new burden." *Id.* at 77. Thus, a statute which either grants unequal privileges or imposes unequal burdens may be the subject of a claim under Section 23. *Id.; see also Indiana High School Athletic Ass'n v. Carlberg,* 694 N.E.2d 222, 239–40 (Ind.1997).

In *Collins,* we concluded that nothing compels the application of a federal equal protection analytical methodology to claims under Section 23, and that courts should give Section 23 independent interpretation and application. 644 N.E.2d at 75. We held that Section 23 imposes two requirements upon statutes that create classifications and that either grant privileges or impose burdens: "First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics which distinguish the unequally treated classes. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated." *Id.* at 80. We emphasized that, "in determining whether a statute complies with or violates Section 23, courts must exercise substantial deference to legislative discretion." *Id.* We also held that, unlike the federal equal protection analytical framework, the resolution of Section 23 claims does not necessarily require the application of different degrees of scrutiny depending on the class or right at issue. *Id.*

■ In applying the *Collins* standard, the Court of Appeals correctly concluded that this Court already has answered the first question, that is, "whether the disparate treatment accorded by the legislation" was "reasonably related to the inherent characteristics which distinguish the unequally treated classes," *Collins,* 644 N.E.2d at 80,

and properly refrained from re-examining the question in this case. *Martin*, 674 N.E.2d at 1023. Simply put, this Court has held that a classification scheme which distinguishes between victims of medical malpractice and victims of other torts, or viewed from another perspective, between health care providers and other tortfeasors, is reasonably related to the goal of maintaining sufficient medical treatment and controlling malpractice insurance costs in Indiana, and therefore is not unreasonable. *Id.; see Rohrabaugh*, 413 N.E.2d at 894–95; *Johnson*, 404 N.E.2d at 589–90, 604; *see also Havens v. Ritchey*, 582 N.E.2d 792, 794–95 (Ind. 1991). Specifically, this Court has held that the medical malpractice statute of limitations rationally furthers the goal of controlling malpractice costs by encouraging the prompt presentation of claims and, in so doing, limiting unfair exposure to defending health care providers that stems from dimmed memories or the loss of evidence over time. *Rohrabaugh*, 413 N.E.2d at 894–95; *Johnson*, 404 N.E.2d at 604.[8] Nothing in *Collins* changes our conclusion. Although as we stated in *Collins*, "a classification which was proper when enacted may later cease to satisfy the requirement of Section 23 because of intervening changes in social or economic conditions," 644 N.E.2d at 81, nothing in the record and briefs before us in this case warrants a re-examination of the legitimacy of the legislative goal underlying the Medical Malpractice Act or its statute of limitations. *See Cha v. Warnick*, 476 N.E.2d 109, 112–13 (Ind.1985).

We disagree, however, with the Court of Appeals' analysis of the second prong of the *Collins* test. The Court of Appeals correctly observed that victims of medical negligence who are unable to discover their injury and the medical malpractice before the expiration of the two-year statute of limitations are treated differently than plaintiffs who are able to discover the injury and the malpractice before the expiration of the two-year period and that the treatment is not "uniformly applicable" to all malpractice victims within the meaning of *Collins*. 674 N.E.2d at 1022–23. The Court of Appeals then concluded that the statute must fall. *Id.* at 1023. While we agree that the treatment is not "uniformly applicable" to all malpractice victims as required under *Collins*, it is not necessary to strike down the statute to administer the justice required by the Indiana Constitution, and, in fact, to do so is to ignore the final point we emphasized in *Collins*, that is, that courts "must exercise substantial deference to legislative discretion." 644 N.E.2d at 80.

■ The second prong of the *Collins* test is not a test that goes only to the facial validity of the statute, as the Court of Appeals apparently assumed. In fact, when, as here, the language of the relevant statutory provisions creates the primary classifications of medical malpractice victims and the victims of other torts but does not by its terms expressly create the assertedly unfair or disadvantaged subclassification of medical malpractice plaintiffs, the question presented by the second prong of *Collins* is whether the statute is unconstitutional *as applied*. In the context of this case, we agree with plaintiff that, under the second prong of *Collins*, the medical malpractice statute of limitations is not "uniformly applicable" to all medical malpractice victims. Moreover, this is not a case where the subclassification itself furthers the statutory goal of lowering medical costs by encouraging the prompt filing of claims, because plaintiffs who are unable to discover their injury and the malpractice are not empowered to file a claim at all.[9] Effectively,

---

8. *See also United States v. Kubrick*, 444 U.S. 111, 117–18, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) (discussing the rationale of statutes of limitations); *Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 313–14, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945) (same); *Short v. Texaco, Inc.*, 273 Ind. 518, 406 N.E.2d 625, 629 (1980), *aff'd in Texaco, Inc. v. Short*, 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1981).

9. *Cf. Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). In *Logan*, an employee timely filed an employment discrimination claim with the Illinois Fair Employment Practices Commission, but because the Commission failed to schedule a timely hearing within 120 days, the Commission dismissed his claim, and the Illinois Supreme Court upheld the dismissal because, as it construed the statute, the Commission had no jurisdiction to act after the 120-day statutory period. The United States Su-

the doors of the courthouse are forever closed to them.

Section 23 does not permit an application of the statute of limitations that would deprive plaintiff of the two-year statutory period for identifying and pursuing a claim against her doctor simply because she has a disease which may not manifest significant pain or debilitating symptoms until several years after the initial diagnosis or misdiagnosis. Stated another way, consistent with Section 23, plaintiff cannot be foreclosed from bringing her malpractice suit when, unlike many other medical malpractice plaintiffs, she could not reasonably be expected to discover the asserted malpractice and resulting injury within the two-year period given the nature of the asserted malpractice and of her medical condition. Accordingly, under Section 23, the medical malpractice statute of limitations is unconstitutional as applied to plaintiff.

## II. Open Courts Law Clause, Article I, Section 12

■ In addition to arguing that the medical malpractice statute of limitations violates Article I, Section 23 of the Indiana Constitution, plaintiff also argues that it violates Article I, Section 12 of the Indiana Constitution. Plaintiff and its amici would have us broadly hold that Section 12 creates a fundamental right of access to the courts and a fundamental right to a complete tort remedy, and that the occurrence-based medical malpractice statute of limitations effectively abrogates those rights. In framing their arguments, they invite us to explore the outer bounds of the protections Section 12 affords litigants. Defendant and its amici, on the other hand, assert that Section 12 creates no such rights, fundamental or otherwise, that the legislature can abolish any cause of action for any reason, and that we are bound by precedent to uphold the trial court's decision rejecting

plaintiff's claim as untimely under the statute.

The Court of Appeals held that Section 12 recognizes two independent rights: the right of access to the courts and the right to a complete tort remedy. 674 N.E.2d at 1025. The Court of Appeals further held that the occurrence-based medical malpractice statute of limitations is an "unconstitutional abrogation of the right to a complete tort remedy as guaranteed by [A]rticle I, [Section]12 of the Indiana Constitution," 674 N.E.2d at 1026, and declared that the statute of limitations was unconstitutional. Id. at 1027.

We reject plaintiff's invitation to explore the outer bounds of Section 12 in this case. We also reject defendant's invitation to hold that the legislature can abolish any cause of action for any reason without violating Section 12. Rather, consistent with applicable jurisprudential principles, we decline to formulate a rule of constitutional law broader than is required by the precise facts at issue. See Indiana Wholesale Wine & Liquor Co. v. State ex rel. Indiana Alcoholic Beverage Comm'n, 695 N.E.2d 99, 108 (Ind.1998) (citing Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring)). Moreover, although we agree with the Court of Appeals that plaintiff was deprived of the protections afforded her under Section 12, we, again, do not find it necessary to strike down the statute. Giving due deference to the function of the legislature and to its enactment, we simply conclude that, under Section 12, the medical malpractice statute of limitations is unconstitutional as applied.

■ Section 12 provides that "All courts shall be open; and every person for injury done to him in his person, property, or reputation, shall have remedy by due course of

---

preme Court reversed, holding that the Illinois statutory scheme created a cause of action that was a property interest protected by the Due Process Clause of the Fourteenth Amendment and that claimant had been deprived of his property interest without due process. Id. at 422–38, 102 S.Ct. 1148. Six Justices also concluded that the Commission's actions violated the Equal Protection Clause under the lowest tier of permissible equal protection scrutiny because only the

Commission and not the claimant had the power to convene a timely hearing, id. at 442, 102 S.Ct. 1148 (Blackmun, J., joined by Brennan, Marshall, and O'Connor, JJ., concurring) and id. at 444, 102 S.Ct. 1148 (Powell, J., joined by Rehnquist, now C.J., concurring in the judgment), and because, therefore, the classification did not promote the state's interest in a timely disposition of the claim. Id.

law. Justice shall be administered freely, and without purchase; completely and without denial; speedily, and without delay." IND. CONST. art. I, § 12. This Court has analyzed the Article 1, Section 12 language "all courts shall be open," and "every person, for an injury done to him ... shall have remedy by due course of law," in a number of cases referenced in the briefs of the parties and their amici.[10] Contrary to plaintiff's assertion, we have not held that there is a "fundamental right" of access to the courts or to bring a particular cause of action to remedy an asserted wrong. *See Rohrabaugh*, 413 N.E.2d at 893. Moreover, the legislature has the authority to modify or abrogate common law rights provided that such change does not interfere with constitutional rights. *See, e.g., State v. Rendleman*, 603 N.E.2d 1333, 1336 (Ind.1992) (upholding Tort Claims Act; reasoning that the right to sue the State arose under the common law, not the Constitution); *Sidle v. Majors*, 264 Ind. 206, 341 N.E.2d 763, 773–74 (1976) (upholding automobile guest statute which limited a guest's right to sue to situations involving misconduct). We also have specifically upheld the medical malpractice statute of limitations against a facial challenge that it is unconstitutional under both Section 23 and Section 12, and, in so doing, we have emphasized that, although the statute of limitations may limit the substantive right that gives rise to a claim, it does not abrogate the right to seek redress in court because the bar does not fall until a reasonable time for filing has expired. *See Rohrabaugh*, 413 N.E.2d at 893.

This Court has acknowledged, however, that there is a right of access to the courts, and that the legislature cannot unreasonably deny citizens the right to exercise this right. *See State ex rel. Hurd v. Davis*, 226 Ind. 526, 533, 82 N.E.2d 82, 85 (1948); *Square D. Co. v. O'Neal*, 225 Ind. 49, 55–56, 72 N.E.2d 654, 657 (1947). Similarly, we have reasoned that

the legislature cannot deprive a person of a complete tort remedy arbitrarily and unreasonably, consistent with the protections Section 12 affords, and that legislation which restricts such a right must be a rational means to achieve a legitimate legislative goal. *See Johnson*, 404 N.E.2d at 598–600 (upholding the constitutionality of provisions of the Medical Malpractice Act; citing *Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 82–92, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978)). We also have suggested that to construe the medical malpractice statute as precluding "all malpractice actions under all circumstances unless commenced within two years from the act complained of (discoverable or otherwise) would raise substantial questions under the Article I, Section 12 guarantee of open courts and redress for injury to every man, not to mention the offense to lay concepts of justice." *Chaffin v. Nicosia*, 261 Ind. 698, 703–04, 310 N.E.2d 867, 870 (1974). Moreover, we have squarely held that, under Section 12, an occurrence-based notice provision, which requires, as a prerequisite to filing suit against the city, that plaintiff give notice to the city within sixty days of the incident, was unconstitutional as applied to a plaintiff who was mentally and physically incapacitated during the statutory notice period. *City of Fort Wayne v. Cameron*, 267 Ind. 329, 334, 370 N.E.2d 338, 341 (1977).

We need not fully explore the nature and the extent of the right of access to the courts or any other rights conferred by Section 12, because, in this case, it cannot be questioned that, had plaintiff filed her medical malpractice claim within the two-year period, she could have pursued her otherwise valid tort claim. Certainly defendant points to nothing in the Medical Malpractice Act that would preclude her from doing so. The sole question here, then, is whether, given the existence of a tort cause of action, the medical

**10.** Indiana jurisprudence also includes another line of cases which focus on the phrase "due course of law," and have construed this phrase as affording procedural rights analogous to those afforded by the Due Process Clause of the Fourteenth Amendment of the United States Constitution. *See, e.g., Indiana High School Athletic Ass'n v. Carlberg*, 694 N.E.2d 222, 241 (Ind.

1997); *Shook Heavy & Envtl. Constr. Group v. Kokomo*, 632 N.E.2d 355, 361 (Ind.1994); *Haimbaugh Landscaping, Inc. v. Jegen*, 653 N.E.2d 95, 104–05 (Ind.Ct.App.1995). The parties, however, have not made a due course of law or procedural due process argument, and, therefore, we limit our analysis to the Section 12 argument presented by the parties.

malpractice statute of limitations can be applied to deprive plaintiff of her otherwise valid claim.

█ Even a restrained interpretation of Section 12 warrants the conclusion that an application of the two-year statute of limitations on the facts of this case violates both Section 12 and "lay concepts of justice." *Chaffin*, 310 N.E.2d at 870.[11] If Section 12 has any meaning at all, it must preclude the application of a two-year medical malpractice statute of limitations when a plaintiff has no meaningful opportunity to file an otherwise valid tort claim within the specified statutory time period because, given the nature of the asserted malpractice and the resulting injury or medical condition, plaintiff is unable to discover that she has a cause of action. Stated another way, the medical malpractice statute of limitations is unconstitutional as applied when plaintiff did not know or, in the exercise of reasonable diligence, could not have discovered that she had sustained an injury as a result of malpractice, because in such a case the statute of limitations would impose an impossible condition on plaintiff's access to courts and ability to pursue an

otherwise valid tort claim. To hold otherwise would be to require a plaintiff to bring a claim for medical malpractice before becoming aware of her injury and damages, an essential element of any negligence claim, and this indeed would be boarding the bus to topsy-turvy land.[12]

This approach to analyzing plaintiff's claim is consistent with the approach taken in other jurisdictions which have provisions similar to Section 12 in their state constitutions. *See, e.g., McCollum v. Sisters of Charity of Nazareth Health Corp.*, 799 S.W.2d 15 (Ky. 1990); *Gaines v. Preterm–Cleveland, Inc.*, 33 Ohio St.3d 54, 514 N.E.2d 709 (1987); *Hardy v. VerMeulen*, 32 Ohio St.3d 45, 512 N.E.2d 626 (1987); *Hellman v. Mateo*, 772 S.W.2d 64, 66 (Tex.1989); *Neagle v. Nelson*, 685 S.W.2d 11, 12 (Tex.1985); *Nelson v. Krusen*, 678 S.W.2d 918 (Texas 1984); *Felan v. Ramos*, 857 S.W.2d 113 (Tex.App.1993).[13]

There can be no question here that plaintiff was unaware that she had a malignancy and that the cancer had spread to her lymph nodes until April 1994, over three years after defendant performed the needle aspiration and informed her that she had fibrocystic

11. *See generally* John H. Bauman, *Remedies Provisions in State Constitutions and the Proper Role of the State Courts*, 26 WAKE FOREST L. REV 237, 250–55, 258–84 (1991) (discussing various approaches to interpreting and analyzing open courts/remedies clause arguments; describing occurrence-based medical malpractice statutes of limitations as presenting a kind of procedural due process issue that arises because the statutes are unreasonably short given the likely discovery and latency periods; discussing other applications as a form of substantive restraint on the legislative power to limit or abolish common law causes of action); William C. Koch, Jr., *Reopening Tennessee's Open Courts Clause: A Historical Reconsideration of Article I, Section 17 of the Tennessee Constitution*, 27 U. MEM. L. REV 333, 436–47 (1997) (discussing various approaches to interpreting and analyzing open courts/remedies clause arguments); David Schuman, *The Right to a Remedy*, 65 TEMP. L. REV. 1201, 1203–13 (1992) (same); Jerome L. Withered, *Indiana's Constitutional Right to a Remedy by Due Course of Law*, 37 Res Gestae 456 (1994) (discussing Indiana cases interpreting Section 12 as well as cases in other jurisdictions interpreting similar provisions).

12. We agree with the Court of Appeals assessment on this point. 674 N.E.2d at 1027. The Framers of our Constitution would have con-

curred with Justice Jerome Frank's Alice–in–Wonderland notion on the absurdity of applying medical malpractice statute of limitations in cases such as this:

> Except in topsy-turvy land, you can't die before you are conceived, or be divorced before ever you marry, or harvest a crop never planted, or burn down a house never built, or miss a train running on a non-existent railroad. For substantially similar reasons, it has always heretofore been accepted, as a sort of legal "axiom," that a statute of limitations does not begin to run against a cause of action before that cause of action exists, i.e., before a judicial remedy is available to the plaintiff.

*Dincher v. Marlin Firearms Co.*, 198 F.2d 821, 823 (2d Cir.1952) (Frank, J., dissenting), *quoted in Perkins v. Northeastern Log Homes*, 808 S.W.2d 809, 817 (Ky.1991).

13. *Cf. Urie v. Thompson*, 337 U.S. 163, 168–71, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949) (declining to construe a three-year federal statute of limitations to bar a claim which asserted that the inhalation of silica dust resulted in silicosis, because to bar the suit would be to require the claimant to file a claim during the limitations period and before the symptoms were apparent and would be to charge the claimant with knowing the "inherently unknowable," that is, "the slow and tragic disintegration of his lungs").

breast disease and was fine and approximately eighteen months after her last visit to his office. To require plaintiff under these circumstances to file her claim before the expiration of the two-year medical malpractice statute of limitations would require her to file a claim before she was aware of the malpractice and the resulting injury and would impose an impossible condition on her access to the courts and pursuit of a tort remedy. In other words, it would require her to file a claim before such claim existed. This application of the medical malpractice statute of limitations is so unreasonable as to violate Section 12. We therefore conclude that, under Section 12, the medical malpractice statute of limitations is unconstitutional as applied to plaintiff.

## CONCLUSION

Accordingly, we conclude that the statute of limitations contained in Indiana Code section 34–18–7–1(b) is unconstitutional as applied to plaintiff under Article I, Section 23 and Section 12, the Privileges and Immunities and Open Courts Clauses of the Indiana Constitution. We, therefore, reverse the trial court's grant of summary judgment in favor of defendant and remand for further proceedings not inconsistent with this opinion and with our opinion in *Van Dusen* also decided today.

DICKSON and BOEHM, JJ., concur.

SULLIVAN, J., concurs in result with separate opinion.

SHEPARD, C.J., dissents with separate opinion.

SULLIVAN, Justice, concurring in result.

I believe that precedent·dictates that the Medical Malpractice Act's statute of limitations does not violate either art. I, § 12, or art. I, § 23, of the Indiana Constitution. *Havens v. Ritchey,* 582 N.E.2d 792, 795 (Ind.

1991) (after affirming constitutionality of the Medical Malpractice Act's statute of limitations, holding: "It is thus beyond dispute that [plaintiffs'] medical malpractice action had to be brought within two years of the date of the alleged act, omission, or neglect."); *Rohrabaugh v. Wagoner,* 274 Ind. 661, 663–68, 413 N.E.2d 891, 893–95 (1980); *Johnson v. St. Vincent Hosp.,* 273 Ind. 374, 403–06, 404 N.E.2d 585, 603–04 (1980); *Jones v. Cloyd,* 534 N.E.2d 257, 259–60 (Ind.Ct. App.1989); *Nahmias v. Trustees of Indiana Univ.,* 444 N.E.2d 1204, 1210 (Ind.Ct.App. 1983), *trans. denied; Carmichael v. Silbert,* 422 N.E.2d 1330, 1334 (Ind.Ct.App.1981), *trans. denied.*

I think the strongest precedent the majority cites for its position is *City of Fort Wayne v. Cameron,* 267 Ind. 329, 370 N.E.2d 338 (1977). But in examining the case law since *Cameron,* I find at least implicit rejection of it as authority for constitutionalizing the discovery rule in medical malpractice cases. Each of the decisions I have cited in the preceding paragraph as precedent was decided after *Cameron.* Each explicitly or implicitly rejected the claim that the Medical Malpractice Act's statute of limitations violated art. I, § 12, without finding *Cameron* applicable. In 1980, Judge Chipman raised the possibility that *Cameron* might apply in precisely this situation. *See Alwood v. Davis,* 411 N.E.2d 759, 761 (Ind.Ct.App.1980). Yet neither our Court nor the Court of Appeals in our respective subsequent decisions has seen fit to use *Cameron* to constitutionalize the discovery rule in medical malpractice cases.[1]

I concur that summary judgment in favor of the defendant was improper, however, because I agree with the Court of Appeals that there were genuine issues of material fact concerning whether the statute of limitations was tolled by the doctrine of active fraudulent concealment. *Martin v. Richey,* 674 N.E.2d 1015, 1029 (Ind.Ct.App.1997).[2]

---

1. None of Judge Riley in this case, Judge Barteau in *Harris v. Raymond,* 680 N.E.2d 551 (Ind.Ct. App.1997), nor Judge Friedlander in his dissent in *Johnson v. Gupta,* 682 N.E.2d 827 (Ind.Ct.App. 1997) (Friedlander, J., dissenting), cite *Cameron* as authority.

2. As a general rule, if we are able to resolve a case on non-constitutional grounds, we do not proceed to resolve the constitutional issues presented. *Indiana Wholesale Wine & Liquor v. State,* 695 N.E.2d 99, 107 (Ind.1998); *Citizens Nat'l Bank of Evansville v. Foster,* 668 N.E.2d 1236, 1241 (Ind.1996). Given that we are presented with companion cases that do not appear

SHEPARD, Chief Justice, dissenting.

I join with Justice Sullivan in adhering to the decision in *Johnson v. St. Vincent Hospital, Inc.*, 273 Ind. 374, 404 N.E.2d 585 (1980). I gather that the majority does the same, and deems itself only to be deciding a new question: whether "the statute of limitations is unconstitutional *as applied* to the plaintiff in this case." Op. at 1280.

The notion that the statute is unconstitutional only as applied to the plaintiff in this case necessarily means that it must be constitutional in some other cases. What cases could those be? The statute's purpose is to adopt an event-based limit rather than a discovery-based limit. The Court says it is unconstitutional as to those who cannot promptly discover their injury. This seems like a facial unconstitutionality, a question we have already resolved.

to be able to be resolved on non-constitutional grounds, I agree that it is appropriate to proceed

to the constitutional issues here.