**Sharon HALBE, Appellant (Plaintiff Below),**

v.

**Howard WEINBERG, M.D. Appellee (Defendant Below).**

**No. 45S03–9506–CV–692.**

Supreme Court of Indiana.

Oct. 8, 1999.

As Modified on Denial of Rehearing Jan. 7, 2000.

Krista Smith MacLennan, Smith & De-Bonis, East Chicago, Indiana, Attorney for Appellant.

David C. Jensen, Gregory A. Crisman, Eichorn, Eichorn & Link, Hammond, Indiana, Attorneys for Appellee.

ON PETITION TO TRANSFER

SELBY, J.

Sharon Halbe, Appellee/Petitioner and Plaintiff below, seeks review of the Court of Appeals' grant of summary judgment in favor of Howard Weinberg, M.D., Appellant and Defendant below. In *Halbe v. Weinberg*, the Court of Appeals affirmed the trial court's grant of summary judgment, finding that Halbe's relationship to Dr. Weinberg had terminated in November 1988, and that there was therefore no dispute but that her claim of April 20, 1992 was barred under the applicable medical malpractice statute of limitations. *See* 646

N.E.2d at 997 (discussing Ind.Code § 16–9.5–3–1 (reenacted at Ind.Code § 27–12–7–1 (1993)). Halbe alleged that Dr. Weinberg should be equitably estopped, under the doctrine of fraudulent concealment, from using the statute of limitations as a defense because he made affirmative misrepresentations to her regarding the content of the breast implants he inserted into her body. Halbe also alleged that the physician-patient relationship with Dr. Weinberg did not end until February 26, 1992, thereby rendering her complaint of April 20, 1992 timely filed.

In *Martin v. Richey,* we found the current medical malpractice statute of limitations, Indiana Code § 34–18–7–1(b) (1998) (repealing § 27–12–7–1 (1993)), to be invalid as applied to the plaintiff because the plaintiff was unable to discover her tort claim before the expiration of the limitations period. *See* 711 N.E.2d 1273, 1284 (Ind.1999). We held that to bar the plaintiff in *Martin* from pursuing her tort claim would violate both the Privileges and Immunities Clause, Article 1, § 23, and the Open Courts Law Clause, Article 1, § 12, of the Indiana Constitution. *See id.* at 1285. We find that the holding of *Martin* requires that Halbe be allowed to proceed with her medical malpractice and fraud claims, and therefore reverse the Court of Appeals' and trial court's grant of summary judgment in favor of the Defendant and remand to the trial court for proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

The facts viewed in the light most favorable to Halbe, the nonmovant, reveal the following. On October 14, 1982, Halbe visited Dr. Weinberg, a licensed physician certified by the American Board of Plastic and Reconstructive Surgery, who diagnosed her with extensive fibrocystic disease in both breasts. This was her first visit to Dr. Weinberg. Less than a month later, he performed a double mastectomy,[1] and on April 25, 1983, he gave her breast implants as part of a reconstructive procedure. Halbe maintains that before the reconstructive surgery Dr. Weinberg asked her to choose between two types of breast implants, which he respectively labeled "saline" and "silicone" implants. According to Halbe, she told Dr. Weinberg she wanted "saline implants" and "did not want implants containing silicone." (R. at 52.) She further maintains that Dr. Weinberg approved her choice and indicated he would supply her with "saline implants." (R. at 51–52.) The implants inserted into Halbe's body in April 1983 actually consisted of 75 percent saline solution and 25 percent silicone gel.[2] Throughout this first course of treatment, Halbe either visited or spoke to Dr. Weinberg on about sixteen separate occasions.

Halbe returned to Dr. Weinberg in November 1983. In January 1984, he performed further reconstructive surgery, and replaced Halbe's breast implants with larger ones. Halbe contends Weinberg indicated he would use the same kind of implants, and the new implants did contain roughly the same saline-silicone ratio as the original ones.[3] During this phase of treatment, which lasted almost four months, Halbe spoke to or visited Dr. Weinberg eight times.

Halbe began another round of treatment in May 1984. Dr. Weinberg again replaced her breast implants. According to Halbe, Dr. Weinberg told her he would insert the same type of implants he had originally used. The implants he in fact used, however, contained 90 percent sil-

---

1. Specifically, Dr. Weinberg performed a bilateral reduction mammoplasty with subcutaneous mastectomy.

2. The implants contained 210 cc. of saline solution and 70 cc. of silicone gel.

3. The second implants consisted of 310 cc. of saline solution and 90 cc. of silicone gel.

icone gel and 10 percent saline solution.[4] During this phase of the treatment, Halbe was in touch with Dr. Weinberg on approximately nine separate occasions.

Dr. Weinberg did not see Halbe during the next year and a half. In June 1986 she returned for treatment of a mass on her left breast. She underwent surgery to remove the mass in July 1986, and visited or spoke to Dr. Weinberg approximately nine times during the course of that treatment.

Two years later, in August 1988, Dr. Weinberg treated Halbe for a lesion on her eyelid, a condition that was apparently unrelated to her breast implants or the fibrocystic disease. In November 1988, Halbe returned to Dr. Weinberg after she experienced drainage from her left nipple. Dr. Weinberg's examination did not reveal any problems, but he recommended a follow-up mammogram. Presumably, Halbe did not follow up on the mammogram.

Three years later, in January 1992, Halbe became aware of media reports concerning symptoms other women were experiencing allegedly because of leaking silicone breast implants. Halbe maintains that she then called Dr. Weinberg's office on at least three occasions to inquire about the content of her implants, and that his employees told her "she did not have to worry because [she] had saline implants." (R. at 52.)[5]

In February 1992, Halbe obtained her medical records directly from the hospital where Dr. Weinberg had performed the implant surgeries. Halbe then learned for the first time that her implants contained silicone gel. Halbe contends that Dr. Weinberg "never informed [her] that he

would or did place in [her] any implants containing silicone gel." (R. at 52.)

On February 26, 1992, Halbe called Dr. Weinberg's office to request testing to determine whether her implants were leaking. She did not speak directly to Dr. Weinberg, but his employee told Halbe that Dr. Weinberg would order a mammogram to test for leakage. Dr. Weinberg's employee made the following entry in Halbe's records:

Pt. called [with] questions related to implants--*She already had records*—She is to call if she has any problems. She requested mammo—Order left at [the hospital] for her to have [illegible]. (emphasis added).

(R. at 56.) According to Halbe, the employee she spoke with that day left the telephone several times during the conversation, presumably to consult with Dr. Weinberg.

Halbe claims that a number of her ailments—including joint and muscle pain, headaches, fatigue, digestive problems, and urinary tract problems—were caused or aggravated by the silicone gel breast implants. During the late 1980s and early 1990s Halbe sought medical treatment from a number of health care providers, but she sought treatment regarding her breast implants exclusively from Dr. Weinberg.

■ On April 20, 1992, Halbe filed the present action against Dr. Weinberg and the manufacturers of the implants. In her amended complaint, Halbe alleged that: (1) Dr. Weinberg committed medical malpractice "by failing to make reasonable disclosures of material facts relevant to her decision to consent to surgical placement of breast implants," (R. at 15)[6], and

---

4. The implants consisted of 450 cc. of silicone gel and 50 cc. of saline solution.

5. The record does not clearly disclose whether or not Dr. Weinberg disputes the existence of these calls. He swore in an affidavit that after 1988 he had not "treated or otherwise rendered professional care to Sharon Halbe," (R. at 34), but he admits that she called his office on February 26, 1992.

6. Plaintiff has articulated an informed consent claim here. Under the doctrine of informed consent, a physician must disclose the facts and risks of a treatment which a reasonably prudent physician would be expected to disclose under like circumstances, and which a reasonable person would want to know. *See Culbertson v. Mernitz*, 602 N.E.2d 98, 100–01 (Ind.1992).

(2) "by making affirmative misrepresentations ... regarding the breast implants used in both[7] surgeries." (R. at 15–16.) She further alleged that Dr. Weinberg committed fraud by representing to Halbe: (1) that her breast implants "would and did contain saline solution, rather than silicone gel" (R. at 17); and (2) that Dr. Weinberg knew the representations to be false "and made them with intent to deceive or defraud ... or ... with reckless ignorance of their falsity." (Id.)[8]

Dr. Weinberg moved for summary judgment on October 2, 1992, arguing that Halbe's claims were barred by the statute of limitations. Dr. Weinberg contended that, even taking Halbe's allegations as true, the statute of limitations would have been tolled by fraud or misrepresentations only until the termination of their relationship in 1988.

Halbe's response was two-fold. She argued that the non-disclosures amounted to fraudulent concealment, which estopped Dr. Weinberg from asserting the two-year limit until 1992, when she claims the physician-patient relationship terminated. Alternatively, Halbe maintained that Dr. Weinberg's affirmative misrepresentations had the effect of tolling the statute of limitations until January or February 1992, when she could "no longer reasonably rely on Defendant Weinberg's misrepresentations." (R. at 44–45.)

With regard to Halbe's substantive allegations, in Dr. Weinberg's answer to Halbe's amended complaint, he denied the allegation accusing him of representing to Halbe that she would receive or had received saline breast implants. At the hearing on his motion for summary judgment, however, Dr. Weinberg's counsel responded with, "That's true," to the allegation that "the patient was told that saline breast implants were being placed." (R. at 107.) In his trial court submissions, Dr. Weinberg avoided altogether mentioning that the third set of implants contained 90 percent silicone gel.[9]

The trial court granted Dr. Weinberg's motion for summary judgment, finding that Halbe was barred under the statute of limitations from pursuing her claims. The trial judge largely agreed with Halbe's characterization of the legal status of the doctrine of fraudulent concealment, but did not find the doctrine applicable to her case. First, the judge held that Halbe had failed to establish a factual issue regarding the termination of the physician-patient relationship. He found her assertion that

7. We presume that the use of the word "both" here is a mistake, given that Halbe had three surgeries and was given breast implants containing silicone gel in each surgery. Halbe mistakenly uses the word "both" to refer to her surgeries later in the record as well.

8. We note that Plaintiff has not alleged that Dr. Weinberg failed to warn her of the dangers of silicone implants as he became aware of them. There is nothing in the record which indicates Dr. Weinberg has ever received a recall notice from a breast implant manufacturer, which would have necessitated his notifying all current and former patients with breast implants of the dangers associated with them. See Harris v. Raymond, 715 N.E.2d 388, 393 (Ind.1999) (finding a duty to warn former and current patients about safety concerns that arise regarding medical devices inserted into and left in patients' bodies).

9. The record indicates that Dr. Weinberg conspicuously omitted from his affidavit any reference to the content of this set of breast implants, even though he provided precise information about the first and second set of implants. (R. at 33–34.) Dr. Weinberg's counsel appears to have built upon that omission to mislead the trial court in the summary judgment hearing. Counsel stated: "As the doctor's affidavit sets out, these implants are largely saline and can obtain [sic] a small portion of [silicone] gel." (R. at 107.) The judge then cut off Halbe's counsel when she attempted to respond. (Id.) In his brief to the Court of Appeals, Dr. Weinberg's counsel continued to maintain that "Dr. Weinberg's uncontradicted affidavit establishes that he did, in fact, use saline implants." (Br. Ct.App. at 29.) Indiana's Rules of Professional Conduct mandate that "[a] lawyer shall not knowingly ... make a false statement of material fact ... to a tribunal" or "offer evidence that the lawyer knows to be false." Ind. Prof'l. Conduct R. 3.3(a)(1), (4).

the physician-patient relationship continued until 1992 to be based purely on her subjective belief, which he held was insufficient as a matter of law under *Babcock v. Lafayette Home Hosp.*, 587 N.E.2d 1320, 1324 (Ind.1992). Second, following *Guy v. Schuldt*, 236 Ind. 101,. 138 N.E.2d 891 (1956), the trial judge concluded she could not pursue her claim because she had "not shown any affirmative misrepresentation made by Defendant Weinberg that would cause the statute of limitations to be tolled until a date later than the termination of the physician-patient relationship." (R. at 118.)

Halbe appealed, challenging the trial court's findings on both accounts. The Court of Appeals affirmed, but addressed only Halbe's first claim. According to the court, the dispositive question was "whether the physician-patient relationship terminated in November 1988." *Halbe v. Weinberg*, 646 N.E.2d 995, 996 (Ind.Ct.App. 1995). The Court of Appeals found that the physician-patient relationship had terminated in November 1988 and affirmed.

On petition to transfer, Halbe maintains that the Court of Appeals' grant of summary judgment was improper. Halbe argues that it was improper for the Court of Appeals to grant summary judgment without addressing her fraudulent concealment claim, in particular, whether the statute of limitations was tolled by Dr. Weinberg's misrepresentations until 1992. She further disputes the Court of Appeals' finding that, as a matter of law, her relationship to Dr. Weinberg terminated in November 1988.[10] We granted transfer, *Halbe v. Weinberg*, No. 45S03–9506–CV–692 (Ind. June 15, 1995), and now discuss Halbe's claim in light of *Martin v. Richey*, 711 N.E.2d 1273 (Ind.1999). We also address briefly her fraudulent concealment claim, but note that a decision in Halbe's favor with regard to the statute of limitations

question makes it unnecessary for us to exercise our equity power under the doctrine of fraudulent concealment.

## DISCUSSION

■ We reverse the trial court's grant of summary judgment in favor of Defendant in light of our holding in *Martin v. Richey*, 711 N.E.2d 1273 (1999), which established that the two-year medical malpractice statute of limitations is unconstitutional as applied to plaintiffs who are unable to discover their medical malpractice claims before the expiration of the limitations period. *See id.* at 1284–85. Even with the exercise of reasonable diligence, Halbe would not have discovered, and indeed did not discover, her medical malpractice claim until February 1992. On April 20, 1992, only two months after she learned her breast implants contained silicone, she filed suit against Dr. Weinberg. Thus, her claim was filed well within the statutory period of two years.

In *Martin*, we found that it would violate the Privileges and Immunities Clause, Article I, § 23, and the Open Courts Law Clause, Article I, § 12 of our Constitution to bar a plaintiff from bringing a medical malpractice claim which she could not have discovered before the expiration of statute of limitations. *See* 711 N.E.2d at 1285. The plaintiff in *Martin* claimed that the defendant had failed "to diagnose and treat her breast cancer in a timely manner." *Id.* at 1277. She went to the defendant to have him check a lump in her breast and did not consult with any other doctors after he aspirated the lump. *See id.* at 1276–77. Three years later she began to experience increased pain, at which time her malpractice claim would have already expired under an occurrence-based statute of limitations. *See id.* Declining to strike down the statute of limitations,

---

**10.** Halbe also argues that the Court of Appeals decision engendered a conflict in Indiana law regarding whether the date of the termination of a physician-patient relationship can be determined as a matter of law, or

whether such a determination must be left to the fact-finder. (R. at 16.) We have reviewed the case law Halbe cites, *Adams v. Luros*, 406 N.E.2d 1199 (Ind.Ct.App.1980), and find no conflict.

we found it invalid as applied to that plaintiff. *See id.* at 1279. Under *Martin,* a plaintiff need not possess the prescience to file a claim before she knows or has reason to know a claim exists. *See id.* at 1284.

Turning to the instant case, we find that the statute of limitations on Halbe's malpractice claim began to run in February 1992, at which time Halbe discovered her breast implants contained silicone. Dr. Weinberg inserted implants into Halbe's body on three separate occasions. Halbe alleges that in each instance she was offered, and requested, saline implants. The record indicates that she instead received, in varying degrees, breast implants containing silicone. Indeed, those in her body when she discovered her claim, in February 1992, consisted of 90 percent silicone gel. Halbe had no reason we know of, prior to January or February of 1992, to mistrust her doctor's representations to her that she would receive implants containing saline. She had no reason, therefore, to suspect she had received silicone implants.[11] When she experienced discharge from her left nipple in 1988, her doctor's examination of her revealed no abnormalities. In January 1992, after Halbe had heard media reports regarding the dangers of silicone, she called her doctor to find out the content of her implants. The record does not reveal whether Halbe had been experiencing any adverse effects from the silicone at that time, or merely sought reassurance from Dr. Weinberg that her implants contained only saline. In either instance, we see nothing in the record that would lead us to believe that, in the exercise of reasonable diligence, Halbe should have had any reason whatsoever to suspect she had a cause of action against her doctor before 1992. In January 1992, after having called Dr. Weinberg's office, she may have suspected something was amiss. It was not until February 1992, though, that Halbe discovered she did not have the type of breast implant she thought she had received. Under *Martin,* Halbe's filing of her claim on April 20, 1992, fell well within the statutory period.

## FRAUDULENT CONCEALMENT

The doctrine of fraudulent concealment is an equitable remedy that operates to bar a defendant from asserting the statute of limitations as a defense. Under this doctrine, a defendant who has prevented a plaintiff from discovering an otherwise valid claim, by violation of duty or deception, is estopped from raising a statute of limitations defense. *See Hughes v. Glaese,* 659 N.E.2d 516, 519 (Ind.1995). In the medical malpractice context, the doctrine of fraudulent concealment may operate to toll the statutory period until the termination of the physician-patient relationship, or until the patient did discover, or in the exercise of reasonable diligence should have discovered, the doctor's alleged malpractice. *See id.*

We decline to address Halbe's fraudulent concealment claim, because our analysis of the constitutionality of the statute of limitations as applied to Halbe renders unnecessary any discussion of the merits of her fraudulent concealment claim.

## CONCLUSION

We reverse the Court of Appeals and remand to the trial court for further proceedings consistent with this opinion.

DICKSON, J., concurs.

SULLIVAN, J., concurs in result believing that there was sufficient evidence of

---

**11.** Dr. Weinberg places great weight on the fact that, at the time he inserted silicone implants into Halbe, the dangers of silicone implants were not known, concluding that his conduct is not actionable now because it would not have been actionable then. We disagree. A question of fact remains regarding informed consent of the patient, that is, whether Halbe consented or would have consented to implants containing silicone. Moreover, according to Halbe, Dr. Weinberg's staff affirmatively misrepresented to her in February of 1992 that her implants contained saline.

fraudulent concealment to deny Weinberg's motion for summary judgment.

BOEHM, J., concurs in result, agreeing with SULLIVAN, J.

SHEPARD, C.J., not participating.