Jana CORNELL, Appellant–Plaintiff,

v.

John HAMILTON, in his official capacity as Secretary of the Indiana Family and Social Services Administration, and D. Sue Roberson, in her official capacity as State Personnel Director, Appellees–Defendants.

No. 49A02–0208–CV–635.

Court of Appeals of Indiana.

July 8, 2003.

Kenneth J. Falk, Indiana Civil Liberties Union, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Thomas M. Fisher, Special Counsel, Frances Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellees.

Herbert Jensen, Jensen & Associates, Indianapolis, IN, Attorneys for Amicus Curiae, American Family Association of Indiana.

Michael J. Cork, Bamberger, Foreman, Oswald & Hahn, LLP, Indianapolis, IN, Attorneys for Amici Curiae, Senators John Waterman and R. Michael Young and Representative Woody Burton.

## OPINION

KIRSCH, Judge.

Jana Cornell appeals the trial court's decision to grant the motion for summary judgment filed by John Hamilton and D.

Sue Roberson ("the State") and to deny her motion for summary judgment in her suit against them. She raises the following issue for review:

Whether the State's funeral leave policy, under which an employee may be granted funeral leave upon the death of a qualified relative, the death of a spouse's qualified relative, or the death of a member of an employee's household, but homosexuals, who are prohibited by law from marrying their domestic partners, are not granted funeral leave for the death of qualified relatives of their domestic partners, violates the Privileges and Immunities Clause of the Indiana Constitution as applied to Cornell.

We affirm.

### FACTS AND PROCEDURAL HISTORY

This case was decided on stipulated facts, including the following: Jana Cornell is a state employee. She is also a lesbian in a committed, five-year relationship with a woman who will be referred to as her "domestic partner." Cornell and her domestic partner hold themselves out to the community as a committed couple and generally share their lives with one another. Cornell would marry her domestic partner if she were able, but by state law, marriage between two women is prohibited. *See* IC 31–11–1–1.

In 1999, the father of Cornell's domestic partner died. The State's policy regarding paid leave in the event of a person's death provides:

"The appointing authority may allow leave with pay, not to exceed the employee's next three (3) regularly scheduled work days, in the event of the death of any relative specified in this section.... Such leave may be granted upon the death of a husband, wife, father, mother, son, daughter, brother, sis-

ter, grandparent, grandchild, or the spouse of any of these, or a person living in the same household with the employee. For a married employee[ ], these members of the spouse's family are included."

31 IAC 1–9–7(B). Under this policy, Cornell requested three days of funeral leave, and her immediate supervisor, who was aware of Cornell's personal situation, approved the request. However, the State personnel department eventually denied the request because Cornell's domestic partner was not her spouse, and it therefore concluded that she was not eligible for funeral leave under the circumstances. Cornell used three vacation days to receive compensation for the three days in question.

Cornell brought suit against the State alleging that the funeral leave policy violated the Privileges and Immunities Clause of the Indiana Constitution. The State argued that she failed to exhaust her administrative remedies. The trial court agreed and dismissed Cornell's case. She appealed, and a panel of this court reversed the trial court's decision and remanded the case to the trial court for further proceedings. *See Cornell v. Humphreys,* No. 49A02–0008–CV–515, 742 N.E.2d 1042 (Ind.Ct.App. Feb.27, 2001), *trans. denied.*

On remand, the parties entered stipulated facts, and both parties filed motions for summary judgment. The trial court denied Cornell's motion and granted the State's motion, finding that the funeral leave policy did not violate the Privileges and Immunities Clause because it treated all unmarried persons the same. Cornell appeals.

### DISCUSSION AND DECISION

Cornell appeals from the trial court's ruling on cross motions for summary judg-

ment. The fact that the parties file cross motions for summary judgment does not alter our standard of review. *KPMG, Peat Marwick, LLP v. Carmel Financial Corp., Inc.*, 784 N.E.2d 1057, 1060 (Ind.Ct. App.2003). When reviewing the grant or denial of a summary judgment motion, this court applies the same legal standard as the trial court, i.e., summary judgment is appropriate when no designated genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Indiana Ins. Co. v. Am. Cmty. Servs., Inc.*, 718 N.E.2d 1147, 1152 (Ind.Ct.App.1999); *May v. Frauhiger*, 716 N.E.2d 591, 594 (Ind.Ct.App.1999) (citing Ind. Trial Rule 56(C)); *Birrell v. Indiana Auto Sales & Repair*, 698 N.E.2d 6, 7 (Ind.Ct.App.1998), *trans. denied.* This court may not search the entire record but may only consider the evidence that has been specifically designated. *Indiana Ins. Co.*, 718 N.E.2d at 1152; *Birrell*, 698 N.E.2d at 7. All pleadings, affidavits, and testimony are construed liberally and in the light most favorable to the nonmoving party. *May*, 716 N.E.2d at 594.

The parties agree that the applicable law is Article I, Section 23 of the Indiana Constitution, the Privileges and Immunities Clause, which provides: "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens." Privileges and immunities claims brought under Article I, Section 23 are analyzed separately from claims brought under the equal protection clause of the Fourteenth Amendment to the United States Constitution. *Collins v. Day*, 644 N.E.2d 72, 80 (Ind. 1994).

In *Collins*, our supreme court faced the issue of whether the exclusion of agricultural employers from the compulsory scope of the Worker's Compensation Act violated the Privileges and Immunities Clause. In doing so, it announced the appropriate test to determine whether Article I, Section 23 has been violated. After reviewing the historical underpinnings of the provision, it examined the body of case law interpreting the provision and discovered recurrent themes, which it "distilled" into a two step test for determining whether a challenged classification violates the Privileges and Immunities Clause. First,

"where the legislature singles out one person or class of persons to receive a privilege or immunity not equally provided to others, such classification must be based upon distinctive, inherent characteristics which rationally distinguish the unequally treated class, and the disparate treatment must be reasonably related to such distinguishing characteristics."

*Id.* at 78–79. The court explained that this requirement addresses the concern that legislative classifications be just and reasonable, not arbitrary or capricious. Thus, the differential statutory treatment must be reasonably related to inherent characteristics that distinguish the unequally treated class. *Ben–Yisrayl v. State*, 753 N.E.2d 649, 656 (Ind.2001), *cert. denied*, 536 U.S. 918, 122 S.Ct. 2382, 153 L.Ed.2d 201 (2002); *Conrad v. State*, 747 N.E.2d 575, 584 (Ind.Ct.App.2001), *trans. denied*; *Schulz v. State*, 731 N.E.2d 1041, 1045 (Ind.Ct.App.2000), *trans. denied.*

The *Collins* court addressed the need for uniformity and equal availability of the preferential treatment for all persons similarly situated in the second prong of the test. Thus, "any privileged classification must be open to any and all persons who share the inherent characteristics which distinguish and justify the classification, with the special treatment accorded to any particular classification extended equally to all such persons." *Id.* at 79. *See also*

*Ben–Yisrayl,* 753 N.E.2d at 656; *Boggs v. Tri–State Radiology, Inc.,* 730 N.E.2d 692, 696 (Ind.2000); *Conrad,* 747 N.E.2d at 584. Courts must employ this standard while giving substantial deference to the legislature. *Boggs,* 730 N.E.2d at 696; *Collins,* 644 N.E.2d at 80; *Schulz,* 731 N.E.2d at 1045. That is, " '[l]egislative classification becomes a judicial question only where the lines drawn appear arbitrary or manifestly unreasonable.' " *Collins,* 644 N.E.2d at 80 (quoting *Chaffin v. Nicosia,* 261 Ind. 698, 701, 310 N.E.2d 867, 869 (1974)).

While the court in *Collins* explained that there are two types of statutes—those that create special privileges and those that impose special burdens—it also recognized that "implicit in an enactment that imposes an unequal burden is the grant of a special privilege or immunity to persons or classes exempted from the new burden." *Id.* at 77. It concluded that a Section 23 analysis applied regardless of which type of enactment is at issue.

In applying the test, the *Collins* court determined that the agricultural employer exclusion created the classification of agricultural employers and as distinguished from other employers. It next concluded that there were characteristics of agricultural employers that were reasonably related to the classification. Finally, applying the second prong of its announced test, it explained "within the classification of agricultural employers, the exemption from worker's compensation coverage for employees is uniformly applicable and equally available to all persons who are or may become agricultural employers." *Id.* at 81. Thus, the court focused on the distribution of the privilege within the privileged class. Later cases also followed this analysis. *See, e.g., Gambill v. State,* 675 N.E.2d 668, 677 (Ind.1996) (privilege of verdict equally available to all persons who are found guilty but mentally ill at the time the person commits the offense).

Subsequent to *Collins,* our supreme court decided *Martin v. Richey,* 711 N.E.2d 1273, 1279–82 (Ind.1999), upon which Cornell relies and in which our supreme court held that, as applied to the plaintiff, the medical malpractice statute of limitations violated the Privileges and Immunities Clause because it was not uniformly applicable to all medical malpractice victims. The court found that the statute precluded the plaintiff from pursuing a claim against her doctor because she had a disease which has a long latency period and which may not manifest symptoms until several years after the asserted malpractice.

In *Martin,* the plaintiff argued that the statute treated victims of medical malpractice differently than other tort victims with regard to the manner in which the two-year statute of limitations was construed and applied, and nothing warranted this differing treatment. The court explained that IC 34–11–1–1, the general tort statute of limitations, provides that a tort claim must be filed within two years from the date the cause of action accrues, which occurs when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another. By comparison, courts have interpreted IC 34–18–7–1(b), the medical malpractice statute of limitations, as beginning to run at the time of the act of malpractice rather than from the date on which the malpractice is discovered. Thus, the plaintiff asserted that while most tort victims could avail themselves of the more liberal discovery rule, victims of medical malpractice were required to file a claim within two years of the act of malpractice, regardless of whether they had discovered the malpractice. The defen-

dant argued that the relevant classification was not malpractice victims and all other tort victims, but rather health care providers and all other tortfeasors and that the statute was rationally related to the legitimate legislative goal of maintaining access to medical treatment and controlling medical malpractice insurance costs. The trial court granted the defendant's motion for summary judgment, and the Court of Appeals reversed, finding the statute unconstitutional.

On transfer, our supreme court reviewed its decision in *Collins*. It reiterated that a statute that either grants unequal privileges or imposes unequal burdens may be the subject of a claim under Section 23 and laid out the *Collins* test. The court noted that it had held in previous cases that the disparate treatment accorded by the medical malpractice statute of limitations was reasonably related to the inherent characteristics that distinguish the unequally treated classes and declined to address the issue again. *See, e.g., Johnson v. St. Vincent Hospital*, 273 Ind. 374, 379–80, 404 N.E.2d 585, 604 (1980).

The court then examined the second prong of the *Collins* test. It noted that the treatment was not uniformly applicable to all malpractice victims as required under *Collins*, but concluded that it was not necessary to strike down the statute to administer the justice required by the Indiana Constitution. It explained that the second prong of the *Collins* test does not address only the facial validity of the statute. Rather, where the language of the relevant statutory provision creates the primary classifications, but does not by its terms expressly create the assertedly unfair or disadvantaged subclassification, the question presented by the second prong of *Collins* is whether the statute is unconstitutional *as applied*. The court then concluded that under the circumstances, Section 23 does not permit an application of the statute of limitations that would deprive the plaintiff of the two-year statutory period for identifying and pursuing a claim against her doctor simply because she had a disease which may not manifest symptoms until several years after the initial diagnosis or misdiagnosis. It stated that consistent with Section 23, the plaintiff could not be foreclosed from bringing her malpractice suit when, unlike many other medical malpractice plaintiffs, she could not reasonably be expected to discover the asserted malpractice and resulting injury within the two-year period given the nature of the asserted malpractice and of her medical condition. It therefore concluded that under Section 23, the medical malpractice statute of limitations was unconstitutional as applied to the plaintiff. *Id.* at 1282.

This holding was somewhat of a departure from *Collins* in that the plaintiff was not a member of the privileged class, that is, those tort victims to whom the discovery rule had been applied.[1] Rather than

---

1. An alternate privileged class might also be identified—health care providers, who gain the benefit of the stricter statute of limitations. Our supreme court found that the classification met the first prong of the *Collins* test because the extension of a privilege to health care providers furthered the goal of reducing health care costs and addressing a crisis in the health care system. *See Johnson*, 273 Ind. at 379–80, 404 N.E.2d at 589–90. However, in *Martin*, the court explained that the same classification scheme could be explained in alternate ways as "a classification scheme which distinguishes between victims of medical malpractice and victims of other torts, or viewed from another perspective, between health care providers and other tortfeasors...." *Martin*, 711 N.E.2d at 1273. For purposes of its analysis of the plaintiff's claim on the second prong of the *Collins* test, the court focused on the malpractice victim/all other tort victims classification.

be concerned with the distribution of benefits in the privileged class, the court focused on those individuals in the other class. The court explained that within that class, a statute may in effect create an unfair or disadvantaged subclass within the "burdened" class even when uniformly applicable. In such cases, the court explained that "the question presented by the second prong of *Collins* is whether the statute is unconstitutional *as applied.*" *Id.* at 1281. That is, rather than focusing on the distribution of the privileges in the privileged class, the court examined the distribution of the burden in the burdened class. Furthermore, even though the burden appeared evenly distributed by the statute's terms, the court found the Privileges and Immunities Clause violated because the burden was uneven in practice.

In this case, we initially conclude that the State's personnel paid leave policy does create a classification because it extends a privilege only to married employees, creating the classes of married and unmarried employees. Thus, the policy must satisfy the *Collins* test to comply with the Privileges and Immunities Clause. The State's brief is filled with proffered justifications for the policy; many are connected with promoting marriage and encouraging procreation, others are concerned with the difficulty of determining who would qualify for benefits if same-sex domestic partners were included. We find these justifications unpersuasive in light of the fact that, as was discussed at oral argument, many of the largest employers in this country and this state, including its two largest universities, now provide benefits to same-sex domestic partners. Moreover, an examination of the policy itself undermines the State's assertion because it allows for leave time upon the death of a member of an employee's household, without regard for whether the two were legally related.

■ Instead, the policy exists to strengthen family relationships, and families are different today than they once were. For instance, for many years, marriages between persons of different races were also prohibited. Now such marriages are commonplace. In the same vein, while society formerly regarded childrearing as exclusively the province of couples consisting of one man and one woman, that too has now changed. *See In re the Adoption of M.M.G.C., H.H.C., & K.E.A.C.,* 785 N.E.2d 267 (Ind.Ct.App. 2003) (two women may adopt same children). "[P]referential legislative treatment for a classification which was proper when enacted may later cease to satisfy the requirements of Section 23 because of intervening changes in social or economic conditions." *Collins,* 644 N.E.2d at 81. Curiously, however, Cornell concedes that the policy is rationally related to marriage. *See Appellant's Brief* at 13 ("Assuming that the funeral leave policy satisfies the first prong of the *Collins* test …"). Therefore, based on Cornell's framing of the issue, we are not faced with the close question of whether, in this age of changing family relationships, the policy's distinction based on marital status is rational, but whether the privilege is equally available to all persons similarly situated.

Following *Martin,* Cornell argues that the State's funeral leave policy is unconstitutional as applied to her because she can-

---

Using the classification identified under the first prong analysis, the plaintiff in *Martin* was a member of neither class, and the classification appears to extend a privilege, thus fitting squarely within *Collins.* However, under the alternate classification scheme identified in *Martin,* she was clearly a member of the burdened class, and the court's analysis proceeded from this premise.

not reasonably be expected to bring herself within the favored class of employees just as the plaintiff in *Martin* could not reasonably be expected to bring herself within the favored class of malpractice victims.

However, in *Martin* the court focused on the disfavored group because the statute at issue there was a "burden" case—that is, a right that the tort victim previously had was barred by the medical malpractice statute of limitations. By contrast, this case involves the granting of a privilege—funeral leave. Thus, following our supreme court's direction in *Collins,* we focus on the distribution of the privilege within the privileged class. As the *Collins* court itself noted, this distinction between benefits and burdens is somewhat illusory, however, because one person's benefit is necessarily another's burden. Nonetheless, our reading of *Collins* and *Martin* leaves us with no other means of reconciling the shift in the focus of the analysis.

Accordingly, here, within the class of married employees (i.e., the privileged class), all persons are treated the same. Cornell has not alleged that any members of the class have been treated unequally. Her complaint, rather, is that she has not been included in the class. We recognize that IC 31-11-1-1 prevents her from attaining privileged class status by prohibiting her from marrying her chosen partner even though other members of the non-privileged class may do so. However, as in *Collins,* another "privilege" case, we do not inquire as to whether an individual may join the privileged class, but whether the privilege is distributed equally within it. Simply put, Cornell is not "similarly situated" to other married employees in the privileged class. Thus, Cornell's claim fails and whether she or other individuals can make themselves part of the favored class is irrelevant.

But for the legal act of marriage, we cannot discern how Cornell's situation is different from that of other state employees involved in committed relationships. However, she concedes that a distinction based on marriage is rational. Accordingly, the designated evidence does not demonstrate the existence of a genuine issue of material fact that precludes summary judgment. The trial court did not err.

Affirmed.

SULLIVAN, J., and SHARPNACK, J., concur.