**Shirley OTT, in her individual capacity, and also as Personal Representative of the Estate of Jerome Ott, deceased, Appellant–Plaintiff,**

v.

**ALLIEDSIGNAL, INC., Bondex Corporation, Borg–Warner Corporation, McCord Gasket Company, Appellees–Defendants.**

No. 02A04–0409–CV–526.

Court of Appeals of Indiana.

May 19, 2005.

---

Robert E. Paul, Paul Reich & Myers, P.C., Philadelphia, PA, Neal Lewis, Lewis & Associates, Orland, IN, Attorneys for Appellant.

Michael A. Bergin, Julia Blackwell Gelinas, Daniel M. Long, Locke Reynolds, LLP, Indianapolis, IN, Attorneys for Appellee Allied Signal, Inc.

Douglas B. King, James M. Boyers, Wooden & McLaughlin LLP, Indianapolis, IN, Attorneys for Appellee Bondex International Inc.

Jennifer Blackwell, Gooden Orzeske & Blackwell, PC, Indianapolis, IN, Attorney for Appellee Borg–Warner Corp.

R. Troy Mulder, Riley Bennett & Egloff, LLP, Indianapolis, IN, Attorney for Appellee McCord Gasket Co.

## OPINION

VAIDIK, Judge.

### Case Summary

Shirley Ott, for herself and as personal representative of the estate of her late husband, Jerome Ott, maintains this action against several companies that now or previously produced or sold asbestos or asbestos-containing products to Jerome's employers, contending that occupational asbestos exposure caused his lung cancer.[1] In a previous appeal, our supreme court concluded that applying the products liability statute of repose could raise a constitutional issue with respect to Ott's claims and remanded the matter to the trial court for relevant fact finding. On remand, the trial court concluded that Jerome's asbestos-related illness did not manifest itself within the ten-year repose period and granted summary judgment because the statute of repose precluded Ott's action. On appeal, Ott argues that the trial court misapplied our supreme court's instructions. We find that the trial court should have considered certain evidence it struck, and in light of all proper evidence we find no error in the trial court's application of the statute of repose and affirm summary judgment.

### Facts and Procedural History[2]

Ott charged that the four defendant companies were responsible for the illness and death of Jerome, who died from lung cancer that has been attributed to his occupational exposure to asbestos. The companies that now remain as defendants are AlliedSignal, Inc., Bondex Corp., Borg–Warner Corp., and McCord Gasket Co.

In 2001, the trial court acted on the defendants' motions asserting that the products liability statute of repose, Indiana Code § 34–20–3–1, and the special statute of limitations governing certain claims for

---

1. Although Jerome Ott was a plaintiff when this action was filed, he died during the pendency of the case. In this opinion, therefore, we generally refer to Shirley Ott in the singular as the sole plaintiff and appellant and to Jerome by his first name for purposes of clarity.

2. The Court denies the parties' motions for oral argument.

damage caused by asbestos, Indiana Code § 34–20–3–2, required judgment in the defendants' favor. After denying the motions, the trial court certified its orders for interlocutory appeal. In *AlliedSignal, Inc. v. Ott,* 785 N.E.2d 1068 (Ind.2003), *reh'g denied* ("*Ott I*"), our supreme court construed the applicable statutes of repose, analyzed them in relation to applicable constitutional standards, and remanded this case to the trial court for further proceedings.

On remand after our supreme court's decision, all parties again sought summary judgment, supporting their motions with expert evidence primarily in the form of affidavits and deposition transcripts. The trial court's findings and conclusions on summary judgment cover four topics, two of which are at issue in this appeal.

First, the trial court found that the last date when Jerome could have been exposed to the defendants' asbestos was 1974 for McCord, AlliedSignal, and Borg–Warner and 1972 for Bondex. Because the Otts did not bring their claims until 1999, there is no question that they were brought outside the ten-year repose period set by Indiana Code § 34–20–3–1. Appellant's App. p. 81. This finding is not at issue in this appeal.

Second, the trial court concluded that none of the four remaining defendants mined or sold commercial asbestos. *Id.* at 74. In *Ott I,* our supreme court held that the special statute of limitations in Indiana Code § 34–20–3–2 for claims relating to asbestos applied only to entities that both mined and sold commercial asbestos. 785 N.E.2d at 1072–73. Because none of the four remaining defendants mined or sold commercial asbestos, the trial court concluded that Ott's claims against the four remaining defendants were not governed by Indiana Code § 34–20–3–2 but were instead governed solely by the regular products liability statute of repose, Indiana Code § 34–20–3–1. No party has appealed this determination.

Third, the trial court also struck three affidavits filed in support of Ott's motions. Appellants' App. p. 80. These affidavits were by Drs. Arthur Frank, David C. Mares, and Arthur Brody. Two of these affidavits were clearly prepared for other litigation, and none of the three specifically discussed the facts of Ott's case. Ott has appealed this action by the trial court.

Fourth, the trial court applied the statute of repose as instructed by *Ott I* and analyzed the constitutional issue raised by the statute of repose. Applied literally, the statute of repose plainly precludes Ott's claim because Jerome's disease was not diagnosed until after the repose period had passed. Ott claimed that this application of the statute of repose violated her right to a remedy under Article I, § 12 of the Indiana Constitution and her rights under the Equal Privileges and Immunities Clause of Article I, § 23 of the Indiana Constitution.

The trial court's responsibilities on this issue were dictated by our supreme court's opinion stating the following:

> [A] cause of action accrues [under Indiana Code § 34–20–3–1] at that point at which a physician who is reasonably experienced at making such diagnoses could have diagnosed the individual with an asbestos-related illness or disease. * * *
>
> [Article I, § 12 of the Indiana Constitution] is implicated only where a cause of action in fact accrues (*i.e.,* a reasonably experienced physician could have diagnosed the plaintiff with an asbestos-related illness or disease) within the ten-year statute of repose, yet the potential plaintiff had no reason to know of the

diagnosable condition until the ten-year period had expired.

Based on the foregoing, the statutory scheme might be unconstitutional as applied to the plaintiff if a reasonably experienced physician could have diagnosed Jerome Ott with an asbestos-related illness or disease within the ten-year statute of repose, yet Ott had no reason to know of the diagnosable condition until the ten-year period had expired. We direct the trial court to examine this possibility on remand.

*Ott I*, 785 N.E.2d at 1075. The trial court noted that our supreme court in *Ott I* rejected the proposition that the cause of action accrued at the time of exposure to asbestos even if the illness would not have been diagnosable until years later. Appellants' App. p. 86. The trial court found that the process of the development of Jerome's cancer likely began during the ten-year repose period. *Id.* at 88. The trial court also found that there was no evidence that Jerome's disease itself manifested within the repose period. *Id.* Additionally, the trial court found no evidence that a reasonably experienced physician could have diagnosed the illness within the repose period. *Id.* at 88–89.

The trial court concluded that "this Court is unable to find that a genuine issue of material fact exists that Jerome Ott's asbestos-related illness or disease manifested itself within the Ten–Year Statute of Repose period." *Id.* at 91. Additionally, "this Court finds it impossible that a 'reasonably experienced physician' could have diagnosed Jerome Ott with such a disease during this time period." *Id.* The trial court therefore granted summary judgment for the four defendants, and this appeal ensued.

**Discussion and Decision**

Ott argues that the trial court incorrectly struck three affidavits she filed in support of summary judgment. She also argues that the trial court erred in several respects in granting summary judgment in favor of the four defendants, contending that the trial court misunderstood the medical evidence and misapplied our supreme court's decision in *Ott I*. She also reasserts that the trial court's interpretation of *Ott I* and the evidence in this case ignores her rights under the Indiana Constitution. We address each issue in turn.

**I. Affidavits**

■ The trial court granted the four defendants' motions to strike three physicians' affidavits submitted by Ott. Two of the affidavits were prepared for different litigation, and none of the three specifically discussed Jerome. The four defendants argued, therefore, that the affidavits were not relevant or reliable. We review the trial court's decision to exclude evidence for abuse of discretion. *In re Paternity of P.E.M.*, 818 N.E.2d 32, 38 (Ind.Ct.App. 2004).[3]

Ott argues that the affidavits are relevant because they "made the point that all cancer develops in the same pattern. Further, they make the point that non-cancer asbestos disease can be detected within ten years." Appellant's Br. p. 12. The trial court excluded the affidavits because they did not specifically deal with Jerome. "None of these affidavits address Jerome Ott specifically. None of these affidavits apply the scientific knowledge of the doctors to the facts of the specific case of Jerome Ott." Appellant's App. p. 79.

■ We conclude that the trial court interpreted principles of evidence over-strictly in striking the affidavits. The

3. We choose to address Ott's argument on the merits despite the fact that it is unsupported by any citation to authority in her brief. *See* Ind. Appellate Rule 46(A)(8)(a).

cases upon which the four defendants and the trial court relied support exclusion of evidence opining upon the facts of a specific case without adequate basis. Here, in contrast, the affidavits in question provided only general background regarding the etiology of asbestos-related cancers. *See, e.g., id.* at 448 ("The asbestos fibers react with human tissue to become malignant beginning the process of lung cancer relatively soon after inhalation, certainly within a few months if not on initial inhalation."). This information, which explains the disease process applicable to all victims of asbestos-related cancer, including Jerome, is therefore relevant in that it makes facts of consequence to the determination of the action more or less probable than it would be without the evidence. Ind. Evidence Rule 401. This case is therefore unlike *Indiana Michigan Power Co. v. Runge,* 717 N.E.2d 216, 237 (Ind.Ct. App.1999), *reh'g denied,* on which the four defendants rely, because the evidence in this case is relevant.

■ The trial court questioned the affidavits' reliability under Evidence Rule 702 because the affiants did not examine Jerome or his medical records before rendering their opinions. Whether a particular expert statement meets the standard of reliability in Rule 702 must be decided on the facts of each case. The circumstances of this case differ from *Armstrong v. Cerestar USA, Inc.,* 775 N.E.2d 360 (Ind. Ct.App.2002), *trans. denied.* In *Armstrong,* we ruled that an expert affidavit expressing a conclusion about how a workplace accident occurred should not be admitted because the expert did not perform his own testing and was not qualified to opine on the effects of inhaling certain chemicals. *Id.* at 367–68. In contrast, the physicians' conclusions in this case did not deal with the specific facts of a particular accident, but rather they dealt with how a

disease progresses from exposure to fullblown manifestation. Because the affidavits express what appears to be consensus medical opinion that the disease progresses in the same manner in each patient who develops lung cancer, the affidavits are not unreliable just because the physicians did not examine Jerome.

For the same reason, this case differs from *Hannan v. Pest Control Svc., Inc.,* 734 N.E.2d 674 (Ind.Ct.App.2000), *reh'g denied, trans. denied.* In *Hannan,* we approved a trial court's rejection of an expert's opinion purporting to diagnose a plaintiff's illness when the expert had not examined the plaintiff. *Id.* at 682. In this case, in contrast, the physicians were not trying to explain the exact manner in which Jerome contracted cancer, but rather they were explaining the general disease process in their affidavits.

Because the affidavits were relevant and did not raise the reliability issues that we addressed in *Armstrong* and *Hannan,* the trial court should not have excluded them (although the sections in two of the affidavits discussing a separate case are obviously irrelevant, and Ott does not rely on those portions). Although the affidavits should not have been excluded, we note that much of the information contained in the excluded affidavits was presented to the trial court through the physicians' depositions. *See, e.g.,* Appellant's App. p. 1236–42 (Dr. Frank's testimony regarding progress of asbestos-related cancer); p. 1285–93 (Dr. Mares' testimony regarding progress of asbestos-related cancer). Nevertheless, in reviewing the trial court's judgment we will consider the affidavits.

## II. Summary Judgment

■ We review a trial court's decision on summary judgment using the same standard as the trial court: summary judgment is appropriate only where the evidence shows there is no genuine issue of

material fact and the moving party is entitled to judgment as a matter of law. *Am. Home Assurance Co. v. Allen*, 814 N.E.2d 662, 666 (Ind.Ct.App.2004), *reh'g denied, trans. dismissed*. We construe all facts and reasonable inferences drawn from those facts in favor of the non-moving party. *Id*. On appeal, the trial court's order granting or denying a motion for summary judgment is cloaked with a presumption of validity. *Sizemore v. Erie Ins. Exch.*, 789 N.E.2d 1037, 1038 (Ind.Ct. App.2003). A party appealing from an order granting summary judgment has the burden of persuading the appellate tribunal that the decision was erroneous. *Id*. at 1038–39.

Our supreme court outlined the law to be applied here in *Ott I*. First, *Ott I* determined as a matter of statutory construction that only entities that both mined and sold commercial asbestos were subject to the special statute of limitations in Indiana Code § 34–20–3–2.[4] 785 N.E.2d at 1073.

The court also determined that the special statute of limitations' application to "commercial asbestos" covers not any asbestos-containing product but only raw or processed asbestos not incorporated into other products. *Id*. Under these holdings, there is no dispute that the special statute of limitations in Indiana Code § 34–20–3–2 does not apply to Ott's claims against the four defendants in this case.

The court then analyzed Ott's claim that the application of the products liability statute of repose to her case violated Article I, § 12 of the Indiana Constitution.[5] She argued that the long latency period for asbestos-caused cancer meant that the repose period precluded her from recovering for injuries she sustained. Analyzing this claim, the court first determined how to apply the language in Indiana Code § 34–20–3–1(a)(1) requiring commencement of an action within two years "after the cause of action accrues." [6] The court

---

**4.** The special statute of limitations for asbestos claims in I.C. § 34–20–3–2 is as follows:

(a) A product liability action that is based on:

(1) property damage resulting from asbestos; or

(2) personal injury, disability, disease, or death resulting from exposure to asbestos; must be commenced within two (2) years after the cause of action accrues. The subsequent development of an additional asbestos related disease or injury is a new injury and is a separate cause of action.

(b) A product liability action for personal injury, disability, disease, or death resulting from exposure to asbestos accrues on the date when the injured person knows that the person has an asbestos related disease or injury.

(c) A product liability action for property damage accrues on the date when the injured person knows that the property damage has resulted from asbestos.

(d) This section applies only to product liability actions against:

(1) persons who mined and sold commercial asbestos; and

(2) funds that have, as a result of bankruptcy proceedings or to avoid bankruptcy proceedings, been created for the payment of asbestos related disease claims or asbestos related property damage claims.

(e) For the purposes of IC 1–1–1–8, if any part of this section is held invalid, the entire section is void.

(f) Except for the cause of action expressly recognized in this section, this section does not otherwise modify the limitation of action or repose period contained in section 1 of this chapter.

**5.** "All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law."

**6.** The products liability statute of repose in I.C. § 34–20–3–1 is as follows:

(a) This section applies to all persons regardless of minority or legal disability. Notwithstanding IC 34–11–6–1, this section applies in any product liability action in which the theory of liability is negligence or strict liability in tort.

wrote, "with respect to asbestos claims under Section 1, a cause of action accrues at that point at which a physician who is reasonably experienced at making such diagnoses could have diagnosed the individual with an asbestos-related illness or disease." *Ott I,* 785 N.E.2d at 1075.

The court went on to apply *Martin v. Richey,* 711 N.E.2d 1273 (Ind.1999), to the facts of Ott's claim. *Martin* analyzed the application of the two-year medical malpractice statute of limitations to an individual who had been the victim of malpractice but neither discovered nor reasonably could have discovered her injury during the limitations period.[7] The court held that the two-year limitations period could not be constitutionally applied to Martin (although it was not facially invalid) because her cause of action accrued during the limitations period, but the statute of limitations acted as a procedural bar precluding her, through no fault of her own, from pursuing the cause of action she actually possessed.

■ Our supreme court concluded, however, that if Ott's cause of action did not accrue until after the repose period expired, there would be no violation of Section 12. The purpose of the statute of repose is to extinguish causes of action against manufacturers of products once the repose period has expired, and the legislature's establishment of the repose period does not *ipso facto* violate Section

(b) Except as provided in section 2 of this chapter, a product liability action must be commenced:
 (1) within two (2) years after the cause of action accrues; or
 (2) within ten (10) years after the delivery of the product to the initial user or consumer.
However, if the cause of action accrues at least eight (8) years but less than ten (10) years after that initial delivery, the action may be commenced at any time within two (2) years after the cause of action accrues.

12. *See McIntosh v. Melroe Co.,* 729 N.E.2d 972 (Ind.2000) (holding that application of repose period to bar claim that accrued more than ten years after product was delivered to its initial user did not violate Section 12).

The crux of the Section 12 claim on remand, therefore, was when Ott's claim accrued: "the statutory scheme might be unconstitutional as applied to the plaintiff if a reasonably experienced physician could have diagnosed Jerome with an asbestos-related illness or disease within the ten-year statute of repose, yet Ott had no reason to know of the diagnosable condition until the ten-year period had expired." *Ott I,* 785 N.E.2d at 1075. The trial court's assignment on remand was to determine whether a reasonably experienced physician could have diagnosed Jerome's "asbestos-related illness or disease"—that is, if the claim accrued—before the ten-year period expired.

■ Another panel of this Court already has examined this issue. *Jurich v. John Crane, Inc.,* 824 N.E.2d 777 (Ind.Ct. App.2005), *trans. pending* ("*Jurich III*"). While the facts in *Jurich* may differ from the facts of this case, it is nevertheless instructive to examine the Court's approach in *Jurich III.* The Court reviewed its previous decision in *Jurich I,*[8] which was reversed by our supreme court in the

7. *Martin* involved appellate review of summary judgment. The facts regarding whether Martin could have discovered the injury during the limitations period were controverted, but our supreme court assumed for purposes of appellate review that Martin could not have learned of the injury during the limitations period.

8. *Jurich v. Garlock, Inc.,* 759 N.E.2d 1066 (Ind.Ct.App.2001) ("*Jurich I*").

same batch of cases containing *Ott I:*[9]

> [In *Jurich I* ] our original view was that the defendants' products began causing actual injury to Mr. Jurich's lungs within ten years of the delivery of the products, which was sufficient to give rise to a cause of action within the [Products Liability Act]'s statute of repose, even if a disease or illness did not manifest itself until well after the repose period had passed. We recognized that asbestos exposure causes actual damage to one's lungs long before a manifested disease may develop.

*Jurich III*, 824 N.E.2d at 782. The *Jurich III* court concluded that, in *Ott I,* our supreme court rejected the argument that these pre-manifestation physical changes were sufficient to constitute accrual of a cause of action under Indiana Code § 34–20–3–1. *Id.* Rather, asbestos-related "disease or illness" must have "actually manifested itself (and therefore could be diagnosed by a reasonably experienced physician)" within the repose period for a cause of action to accrue. *Id.* (emphasis omitted). Further parsing *Ott I,* the Court concluded that its "requirement of a 'manifested' 'asbestos-related illness or disease' that could have been diagnosed by a 'reasonably experienced physician' refers to a disease that is a clinically-recognized symptomatic condition, or one that could have been detected by a competent physician conducting a routine examination of the patient." *Id.* at 783. *Jurich III* concluded that, on its record, the plaintiff failed to establish that "a reasonably experienced physician could have diagnosed … Mr. Jurich … with an asbestos-related disease or illness within the ten-year statute of repose period.…" *Id.*

We agree with *Jurich III's* general framework and apply it to the facts in the summary judgment record in this case. *Jurich III* correctly analyzed *Ott I* and its application to this case on remand. The trial court's task on remand, and our task on *de novo* review of summary judgment, is to determine whether there is a genuine issue of material fact about the ability of a reasonably experienced physician to diagnose an asbestos-related illness or disease within the repose period. We further agree that "a 'manifested' 'asbestos-related illness or disease' that could have been diagnosed by a 'reasonably experienced physician' refers to a disease that is a clinically-recognized symptomatic condition, or one that could have been detected by a competent physician conducting a routine examination of the patient." *Jurich III*, 824 N.E.2d at 783.

Dr. Frank's affidavit established that the disease process begins when an individual is first exposed to friable asbestos. "The physiologic changes that begin the process of converting healthy cells into malignant cancer cells begins immediately upon the inhalation of asbestos fibers." Appellant's App. p. 448. These changes remain at the microscopic level for many years, and therefore produce no symptoms. *Id.* Initially, the disease process "was pre-clinical, asymptomactic and too small to be detected by x-ray, or through other non-surgical detection methods." *Id.* at 448, 450. Ott's evidence indicated that the only way to detect this pre-clinical activity would be by "a blind open lung biopsy." *Id.* at 450. But the biopsy procedure "would have been expensive and dangerous to the patients and therefore medically unethical." *Id.* Dr. Frank related similar testimony in his deposition. *Id.* at 1236–44.

Dr. Mares' affidavit is similar. He stated that asbestos fibers become embedded

---

**9.** *Jurich v. Garlock, Inc.*, 785 N.E.2d 1093 (Ind.2003) ("*Jurich II*").

in the lungs and "cause physiological injury to those cells, resulting in genetic alterations that then result in malignant transformation." *Id.* at 490. In some cases, the body's immune system suppresses the damaging effect of the fibers. But "[w]hen the body is unable to control the multiplication and reproduction of the injured cell, the uncontrolled reproduction of the injured cell creates a malignant tumor." *Id.* At that stage of disease development, the malignancy is only detectable by genetic testing. Dr. Mares' affidavit also stated that the procedures necessary to diagnose the asbestos-caused condition before it manifests clinically would be invasive, risky, and not in the patient's best interests. Dr. Mares related similar facts in his deposition. *Id.* at 1285–87. Dr. Brody's affidavit related similar facts. *Id.* at 593–94.

Ott's experts also opined that not everyone develops cancer who is exposed to asbestos or who develops microscopic injury as a result of that exposure. *Id.* at 1244–45 (Dr. Frank); 1236 (Dr. Mares). Thus, even if testing could properly be done within the ten-year period, and even if the tests would show cell abnormalities within the ten-year repose period, those cell abnormalities would not necessarily lead to cancer after the repose period expired.

The expert opinions raise the further problem that the only way to detect cell abnormalities during the repose period would be to perform an open lung biopsy, an invasive and dangerous procedure that would not have been medically indicated during the repose period, when Jerome was asymptomatic. The experts testified that the usual latency period for this type of cancer—the period between exposure and occurrence of symptoms—varies from ten to thirty or more years.

The undisputed evidence, including evidence from Ott's experts, is that there are immediate effects from exposure to asbestos. Some of those effects can be detected immediately, although they do not cause symptoms for some time. Further, while some effects can be detected immediately, they can only be detected by use of a highly invasive procedure that would not be medically appropriate when the disease is asymptomatic. Moreover, even if the cellular-level changes were detected before symptoms occurred, those changes would not indicate with certainty that cancer would eventually develop.

The evidence provided on summary judgment, therefore, does not show that an asbestos-related illness or disease manifested within the ten-year repose period, nor does it show that a reasonably experienced physician would have been able to diagnose an asbestos-related illness or disease during the repose period. Nothing in the record indicates that actual asbestos-related disease was present in Jerome's lungs during the repose period, although there is evidence that the asbestos in his lungs would have caused abnormalities falling short of illness or disease during that time period. For purposes of the statute of repose as interpreted by *Ott I*, the abnormalities cannot be classified as asbestos-related illness or disease because there is no certainty during the repose period that they would eventually develop into disease.

Judge Barnes' formulation in *Jurich III* is helpful. He concluded that to fit within the *Ott I* definition of an illness manifesting within the repose period, it must be a "disease that is a clinically-recognized symptomatic condition, or one that could have been detected by a competent physician conducting a routine examination of the patient" during the repose period. *Jurich III*, 824 N.E.2d at 783. We accept

this test because it requires the plaintiff either to display symptoms or to present a condition that can be diagnosed without unusual or heroic measures. In this case, Jerome did not have clinically recognizable, symptomatic lung cancer during the repose period. Nor would his condition have been diagnosable in a regular examination during the repose period—rather, it could have been detected, if at all, only through an invasive and dangerous procedure that would not have been clinically indicated in the absence of symptoms.

Under the test laid out by our supreme court and elaborated in *Jurich III,* the evidence provided by Ott at summary judgment raised no genuine issue of material fact as to whether Jerome's condition manifested itself during the statute of repose period. Ott herself admits in her brief that Jerome had only "the beginning of malignant process and actual nonmalignant disease in the repose period." Appellant's Br. p. 12. Her characterization that "actual nonmalignant disease" was present refers to cellular-level changes owing to exposure to asbestos that might, but would not necessarily, become cancer. *Id.* at 5, 11.

The level of asbestos-induced physical change that was present in Jerome during the repose period is not sufficient to meet the standard set by *Ott I.* Our supreme court indicated that "injury for this purpose [accrual of a cause of action] does not occur upon mere exposure to (or inhalation of) asbestos fibers." *Ott I,* 785 N.E.2d at 1075. The court elaborated on this conclusion in footnote 8 of the opinion, which directly followed the statement quoted in the previous sentence; the cases cited in footnote 8 further support the conclusion that our supreme court had concluded that actual symptoms of asbestos-generated illness had to occur before a cause of action was present.

Footnote 8 cited cases from other jurisdictions holding that mere exposure to asbestos was insufficient to create a cause of action. Rather, these cases held that a cause of action accrued only when there was a diagnosable illness resulting from the exposure.[10] For example, in *Bernier v. Raymark Industries, Inc.,* 516 A.2d 534, 542 (Me.1986), the Maine Supreme Judicial Court held that "[t]he actionable harm is the manifestation of the disease in the body, not the exposure to the potentially hazardous substance." The court further held that "[e]ven assuming that any inhalation of asbestos dust immediately causes microscopic injury to lung tissues, we conclude that the subclinical injury resulting from such inhalation is insufficient to constitute the actual loss or damage to a plaintiff's interest required to sustain a cause of action under generally applicable principles of tort law."[11] *Id.* at 543 (internal quotation omitted). *Bernier* supported this conclusion with similar holdings from other state and federal jurisdictions. Similarly, *Simmons v. Pacor, Inc.,* 543 Pa. 664, 674 A.2d 232 (1996), held that physiological changes caused by exposure to asbestos that were not accompanied by

10. Notably, in the four cases cited in footnote 8, the arguments of the plaintiffs and defendants were the reverse of those parties' arguments in this case because of the manner in which local law applied. In this case, the plaintiff is arguing for an *earlier* date for recognition of the harm caused by asbestos because of application of the statute of repose; in the footnote 8 cases, in contrast, the plaintiffs were arguing for *later* dates of recognition because defendants contended that the plaintiffs had sued *too late* under applicable statutes of limitations.

11. "Subclinical" is defined as "marked by only slight abnormality and not being such as to give rise to overt symptoms; not detectable by the usual clinical tests." *Webster's Third New Int'l Dictionary* 2273 (unabridged 1993).

symptoms or harm were not compensable in tort. *Id.* at 237 ("asymptomatic pleural thickening is not a compensable injury that gives rise to a cause of action."). *See also Burns v. Jaquays Mining Corp.,* 156 Ariz. 375, 752 P.2d 28, 30 (Ariz.Ct.App.1987) ("subclinical injury resulting from exposure to asbestos is insufficient to constitute the actual loss or damage to a plaintiff's interest required to sustain a cause of action"), *review dismissed.*

Our supreme court's reliance on these cases underscores its conclusion that subclinical injuries or other physiological changes resulting from exposure to asbestos are insufficient to support a cause of action until symptoms emerge or until the disease can be diagnosed without resort to extraordinary procedures. If the kind of physiological changes described by Ott's experts were sufficient to support a cause of action in this case, our supreme court would not have relied on the authority in footnote 8.

Ott argues to the contrary that *Ott I* "requires a retrospective analysis. Once the cancer develops the Supreme Court requires medical testing that if a physician had conducted the proper diagnostic procedures during the ten years after sale the cancer would have been found." Appellant's Br. p. 22. This approach is not supported by the text of *Ott I* and would create an exception to the statute of repose that would swallow the rule. Ott's argument is that each time asbestos-related cancer develops after the repose period expires, the courts should determine whether any evidence of a disease process was present during the repose period and, if so, should permit the cause of action to proceed. *Id.* Under this approach, the statute of repose likely would never bar an action for asbestos-related cancer no matter how long after the initial sale the illness manifested itself.

Application of our supreme court's analysis in *Ott I* may seem harsh. It will preclude all products liability claims for asbestos-related illness and disease that manifest themselves more than ten years after the asbestos is delivered to the initial user. As we understand the evidence in this case, this rule will bar most claims for asbestos-related illness and disease related to occupational exposure. This outcome is consistent with interpretations of the products liability statute of repose, which is designed to ensure that evidence is readily available and not lost after a long period of time, to bolster "the ability of manufacturers to plan their affairs without the potential for unknown liability," and to recognize (perhaps erroneously in this case) "that after a decade of use, product failures are due to reasons not fairly laid at the manufacturer's door." *McIntosh,* 729 N.E.2d at 980 (internal quotation omitted).

We conclude that the trial court properly evaluated the evidence and determined that there was no genuine issue of material fact as to whether Ott's cause of action arose during the repose period. Because she had no claim during the repose period, application of the statute of repose did not violate her rights under Article I, Section 12 of the Indiana Constitution (we address a related claim under Article I, Section 23 below). We therefore affirm the trial court's judgment that Ott's action was untimely under the statute of repose.

### III. Jury

Ott also claims that a jury should have determined the factual question regarding when the asbestos-related illness manifested itself. Under the Trial Rules, a trial court may grant summary judgment when no genuine issue of material fact exists and judgment is proper as a matter of law. Ind. Trial Rule 56(C). "[T]he purpose of the rule is not to cut litigants off from their right of trial by

jury if they really have issues to try." *Wozniczka v. McKean,* 144 Ind.App. 471, 247 N.E.2d 215, 228 (1969) (quoting *Poller v. Columbia Broad. Sys.,* 368 U.S. 464, 467, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962)). But parties only are entitled to jury determinations when factual issues actually exist. In this case, the trial court correctly determined that there was no factual issue as to whether Jerome's cancer manifested itself, as defined by *Ott I,* during the repose period, because Ott submitted no evidence creating a factual dispute on that question. Because there was no genuine issue of material fact, no jury was required.

Ott's reliance on *Shah v. Harris,* 758 N.E.2d 953 (Ind.Ct.App.2001), *trans. denied,* requires no different result. To the contrary, in *Shah* this Court reversed the trial court's denial of summary judgment and ordered that summary judgment be granted in favor of medical malpractice plaintiffs on a statute of limitations question. Because the plaintiffs in *Shah* provided evidence that showed that their cause of action arose during the limitations period, and the defendant failed to materially controvert that evidence, it was proper to take the limitations question away from a jury and grant summary judgment for the plaintiffs. The relevant question is whether any material issue of fact is controverted, and in this case that question is answered in the negative, meaning that there is no fact-finding role for a jury to play. The trial court correctly determined this issue without a jury.

## IV. Equal Privileges and Immunities Clause

■ Ott also alleges that the statute of repose, as applied by the trial court, violates her rights under the Equal Privileges and Immunities Clause, Article I, § 23 of the Indiana Constitution.[12] She alleges that this violation occurs because the statute of repose precludes claims by individuals such as herself, who are harmed by asbestos-caused injuries that manifest themselves more than ten years after the product is initially delivered, while permitting claims by those whose asbestos-caused injuries manifest themselves before the repose period expires. As she puts it,

> [t]o apply [*Ott I*] to the medical evidence before this Court and find that the cancer victim has no cause of action while a nonmalignant disease victim has a cause of action, would result in the disparate treatment of asbestos-related disease victims based upon their various disease categories and the time period in which these differing diseases are diagnosable.

Appellant's Br. p. 13–14.[13]

Section 23 addresses the propriety of governmental classifications. As shown by *McIntosh, Indiana High School Athletic Ass'n, Inc. v. Carlberg,* 694 N.E.2d 222 (Ind.1997), *reh'g denied, Humphreys v. Clinic for Women, Inc.,* 796 N.E.2d 247 (Ind.2003), and other cases, a key issue in Section 23 analysis is how to define the classes to be compared. Ott suggests that the appropriate classes for comparison are, in one class, individuals who are harmed by asbestos but whose diseases do not

---

**12.** "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens."

**13.** Ott also argues that this application of the law violates her rights under Article I, Section

12 of the Indiana Constitution, but we believe that this question was already determined by our supreme court in *Ott I,* as explained more fully in Part II of the Discussion and Decision section of this opinion.

manifest for more than ten years after initial delivery of the product, and in the other class, individuals who are harmed by asbestos and whose diseases manifest within the ten-year repose period. Under prescribed Section 23 analysis, it might be difficult to find an inherent difference between those two classes that would relate reasonably to their different treatment under the statute of repose.

But *McIntosh* instructs that these are the wrong classes to compare. 729 N.E.2d at 981 ("It is the claim, not any innate characteristic of the person [harmed], that defines the class."). Rather, we should compare the classes of products created by the statute. *McIntosh* concluded that newer products (those in service less than ten years) are sufficiently different than older products (those in service more than ten years) to support different statutory treatment, although the court admitted that drawing the line precisely at ten years is somewhat arbitrary. *Id.* As discussed above, the differences between older and newer products include the following: injuries from older products are less likely to be caused by inherent defects in the products; lawsuits involving older products present problems of proof; and manufacturers are entitled to know, at some point, that they are no longer responsible for potential lawsuits over products that long ago left their control. *Id.* Our supreme court held in *McIntosh* that these differences are rationally related to inherent distinctions between the classifications and therefore are sufficient to support different treatment under the Section 23 test. *Id.*

The evidence on remand casts this comparison in a somewhat different light. The evidence on remand shows that the true difference in this case is not between newer products and older products. The prod-uct causing Jerome's injury had likely been in service less than ten years—it was a newer product under the statute of repose. The classification embodied in this case is between newer products that cause injuries that manifest themselves within ten years of delivery to the initial user and newer products that cause injuries that manifest themselves more than ten years after delivery to the initial user. *McIntosh* approved different treatment of older products as compared to newer products. "The legislature has provided that after the product is in use for ten years, no further claims accrue. That is not an unreasonable exercise of legislative power." *Id.* at 978. It did not approve the different treatment Jerome's case presents—where long-latency injuries caused by newer products are treated differently than short-latency injuries caused by newer products.

Nor did our supreme court address this application of Section 23 in *Ott I.*[14] As the four defendants point out, our supreme court did cite Article I, § 23 in *Ott I*, Appellees' Br. at 33, but the court applied Section 23 to an altogether different issue—whether the fact that some asbestos-related claims would be covered by the longer limitations statute in Indiana Code § 34–20–3–2 rather than the usual statute of repose violated the Equal Privileges and Immunities Clause. The court ruled that the potential application of the longer limitations period did not violate Section 23 because it benefited, rather than harmed, asbestos plaintiffs. *Ott I*, 785 N.E.2d at 1077.

▪ The issue now before us is different. It requires us to determine whether the statute of repose may be applied constitutionally to preclude claims caused by

---

**14.** This issue was not addressed in *Jurich III.*

newer products when those claims have a longer latency period while shorter-latency claims caused by identical products are not precluded, but may proceed under the ten-year repose statute.[15] We apply the standard in *Collins v. Day*, 644 N.E.2d 72, 80 (Ind.1994):

> First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics which distinguish the unequally treated classes. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated. Finally, in determining whether a statute complies with or violates Section 23, courts must exercise substantial deference to legislative discretion.

We must, therefore, determine whether inherent characteristics distinguish longer-latency claims from shorter-latency claims when both types of claims are caused by products of equal age and whether the different treatment of those claims by the statute of repose is reasonably related to those inherent characteristics. Our supreme court already has indicated that the purposes served by the statute of repose are threefold: to recognize that claims arising long after the product is delivered are less likely to be caused by defects in the product; to give manufacturers certainty regarding when their liability for defective products is cut off; and to ensure that evidence and witnesses are fresh. *McIntosh*, 729 N.E.2d at 980–81. We should apply Section 23 in light of these purposes.

As to the first of these three purposes, we see no inherent differences between the classifications. Regarding illnesses linked to occupational exposure to asbestos, causation is equally attributable to the product whether the illness manifests immediately or decades later. As to causation by the product, there is no inherent difference between short-latency illnesses caused by asbestos and longer-latency illnesses caused by asbestos that is rationally related to different treatment of the two classes.

Regarding the second rationale for the repose statute, in contrast, there is an inherent difference between long-latency and short-latency illnesses that supports different treatment of the two classes. Our supreme court has held that it is rational and permissible for the General Assembly to set a firm date after which manufacturers of products can know with certainty that they no longer have liability for harms caused by products they put into the stream of commerce more than a decade earlier. *McIntosh*, 729 N.E.2d at 981. Barring long-latency claims while permitting short-latency claims is consistent with this statutory purpose. Moreover, the different treatment tracks the inherent difference that permitting long-latency claims

---

**15.** The four defendants set forth precisely this juxtaposition of classifications. "[T]he persons treated differently are (1) product liability plaintiffs whose claim is based on a disease or injury that actually manifested itself within ten years of the product's sale or delivery to the initial user or consumer, but the claimant had no reason to know of it, in which case the claim can be prosecuted under *Ott;* and (2) product liability plaintiffs whose disease or injury did not actually manifest itself within ten years of the product's sale or delivery, in which case the claim is barred by [I.C. 34–20– 3–1]." Appellee's Br. p. 37. The four defendants go on to argue that *Ott I* binds this Court to rule that the classifications do not violate Section 23. Because we believe that our supreme court did not address the application of Section 23 to these classifications in *Ott I, see* 785 N.E.2d at 1077 (addressing only the difference between application of Ind. Code §§ 34–20–3–1 and 34–20–3–2 under Section 23), we conclude that the constitutionality of these classifications remains an open question.

would leave liability open for manufacturers perpetually, while permitting only short-latency claims cuts off liability at an ascertainable time.[16]

As to the third purpose, there are undoubtedly inherent differences between claims raised long after the product was put in use and claims raised closer to the time the product was put in use. A long lapse of time between the victim's exposure to the product and the time the victim's illness manifests would create significant proof problems because evidence would have been lost and witnesses' memories would have faded. In contrast, evidence is often more readily available and witnesses' memories are fresher when litigation occurs closer to the time of exposure to the occupational hazard. This inherent difference also could be a rational reason for different treatment of the two classes.

 Because there are at least two bases to distinguish between long-latency illnesses and short-latency illnesses, we cannot invalidate the statutory distinction between the two kinds of harm that is created by the products liability statute of repose, Indiana Code § 34–20–3–1. As our supreme court already has held, it is legitimate for the General Assembly to provide certainty (that is, "repose") for manufacturers of products so that they can know that after a specified date there can be no more claims based upon their products. *McIntosh*, 729 N.E.2d at 981. It also is legitimate to treat claims differently to encourage their prompt presentation while evidence is fresh. *Id.* Only a single basis is required to uphold the classifica-

tion that Ott challenges. *Collins*, 644 N.E.2d at 80 ("[C]ourts place the burden upon the challenger to negative every conceivable basis which might have supported the classification.") (internal quotation omitted); *Minton v. State*, 802 N.E.2d 929, 935 (Ind.Ct.App.2004) (same), *trans. denied.* The classification therefore survives scrutiny under Article I, § 23.

Affirmed.

SHARPNACK, J., and MAY, J., concur.

---

**16.** We do not read Ott's brief to argue that the different treatment is invalid under the second prong of *Collins*. Nor would any such claim succeed because all long-latency illnesses caused by asbestos are treated identically by Indiana's statutory scheme, which is all

the second prong requires. *See, e.g., Humphreys v. Clinic for Women, Inc.*, 796 N.E.2d 247, 257 (Ind.2003) (applying second prong); *Cornell v. Hamilton*, 791 N.E.2d 214, 220 (Ind.Ct.App.2003) (same).